■ ROBERT NEWMANN et al., Appellants, v MAPAMA CORPORATION, Respondent. — Order, Supreme Court, New York County (Bruce McM. Wright, J.), entered on December 28, 1982, denying plaintiff's motion for a preliminary injunction tolling the running of a five-day period to cure certain claimed violations of their lease or to diligently commence curing said violations and granting defendant's cross motion for an injunction enjoining plaintiffs from denying defendant access to the premises for the purpose, *inter alia,* of making inspections and repairs, appropriating public portions of the building, altering portions of the building, etc., is modified, on the law and the facts, to deny defendant's cross motion for a preliminary injunction and is otherwise affirmed, without costs. Plaintiffs-appellants are tenants of the rear sixth-floor loft at premises 545 Broadway (the premises) under a lease executed in March, 1976, between respondent landlord's predecessor and plaintiff-appellant's predecessor, which restricts the use of the premises to "ARTIST'S STUDIO and for no other purpose". Appellants allege however, that since the inception of the

lease, the premises have been used for residential purposes with the landlord's knowledge and consent. Indeed, in a recent prior holdover proceeding brought by the landlord, the Civil Court (Lester Evens, J.), on June 4, 1982, determined that "there are at least three residential units in the building. These lofts were rented for residential use, in whole or in part with the consent and approval of the prior landlord." The court concluded that the premises were "de facto multiple dwelling[s]" and accordingly dismissed the landlord's petition. Shortly thereafter, on July 20, 1982, defendant served plaintiffs with a five-day notice to cure, purportedly pursuant to paragraph 17 of the lease, citing various alleged violations or defaults under the lease, to wit: (1) making illegal alterations without landlord's consent or governmental authorities' consent, in violation of paragraph 3 of the lease; (2) damage to public areas of the building, in violation of paragraph 4 of the lease, specifically the roof, stairways, common walls and doors; (3) illegal alterations and use of the premises and other areas not rented to the tenants in violation of paragraph 6 of the lease, in that they added structures, debris and other objects to the roof, and cut through structural joists, installed an illegal wood stove, and blocked stairway and roof egress and access; (4) illegally removed a refrigerator and other bulky equipment without landlord's consent into public areas, blocking egress and access in violation of paragraph 8 of the lease; (5) refused landlord access to the premises to inspect or make necessary alterations or both in violation of paragraph 13 of the lease; and (6) failed to surrender the premises at the end of the lease term, to wit, April 30, 1981; (7) other related violations. Within the five-day notice to cure period, the plaintiffs commenced this declaratory judgment action, seeking a declaration of their rights and that they are not in violation of the lease as alleged in the notice to cure, inasmuch as the premises was leased for and are being used for residential purposes. Contemporaneously with service of the summons and complaint, plaintiffs, by order to show cause, sought a *Yellowstone* injunction (*First Nat. Stores v Yellowstone Shopping Center,* 21 NY2d 630) to toll the notice to cure, pending an adjudication of their rights. They alleged that they did not commit any of the lease violations claimed by the landlord and that since the premises was a "de facto multiple dwelling", landlord was actually seeking to compel them to discharge the landlord's obligation to bring the premises into code compliance. A temporary restraining order was contained in the order to show cause. Defendant opposed plaintiff's motion and cross-moved for a preliminary injunction, seeking relief that was the exact parallel of the alleged violations set forth in the notice to cure. Special Term correctly denied preliminary injunctive relief to plaintiff, but erred in granting injunctive relief to the defendant. The relief given defendant landlord substantially granted all the ultimate relief sought by defendant in its counterclaims for a permanent injunction. In view of the sharply disputed factual issues as to whether or not such changes, alterations and additions as tenants may have made were done with the consent, express or implied, of this landlord or its predecessor, and in the absence of any showing of imminent danger or irreparable harm, it was error to alter the *status quo* by the grant of the injunction. The fact that the notice to cure was served on the tenant so soon on the heels of the landlord's defeat in his holdover proceeding is not without significance. At the very least, it raises serious questions as to whether or not this was but another tactic employed by the landlord to clear the building, as claimed by the tenant. Additionally, the fact that Civil Court had recently determined that this building was a "de facto multiple dwelling", subject to the code compliance requirements imposed upon a landlord by the new "Loft Law" (Multiple Dwelling Law, art 7-C, § 280 *et seq.*) renders suspect the landlord's belated contentions of allegedly serious and hazardous alterations and additions made by the tenant. In any event, injunc-

tive relief to the landlord was inappropriate on this record. Nor was this tenant entitled to injunctive relief under the authority of *First Nat. Stores v Yellowstone Shopping Center* (21 NY2d 630 [the classic *Yellowstone* injunction]). The rationale upon which a court is authorized to issue such a *Yellowstone* injunction is that where a notice to cure an alleged violation of a substantial obligation of a lease has been served and the period within which the cure is to be effected is not tolled, the lease expires and the court, thereafter, is powerless to revive or extend that lease, even if it is later determined that there was no violation of the lease. (*First Nat. Stores v Yellowstone Shopping Center, supra.*) Thus it is said that the *Yellowstone* injunction is intended to preserve the *status quo* under the *lease* until the parties' rights can be adjudicated and while the tenancy remains in effect without consideration of the merits of the parties' contention. (*Wilen v Harridge House Assoc.,* 94 AD2d 123; see, also, *Ameurasia Int. Corp. v Finch Realty Co.,* 90 AD2d 760; *Physicians Planning Serv. Corp. v 292 Estates,* 88 AD2d 852.) An essential prerequisite to the invocation of the court's power to issue a *Yellowstone* injunction however, is that there be a lease extant between the parties. Although the parties proceeded below and on this appeal as though there were an existing lease, the record shows that the lease under which the tenants occupy these premises was for a term of five years, commencing May 1, 1976 and expiring April 30, 1981. Indeed, one of the claims by the landlord in its notice to cure was that the tenant was in default of the lease by reason of having "failed to surrender the premises at the end of the lease term, specifically on April 30, 1981." Moreover, the summary proceeding previously brought against this tenant was a "holdover" proceeding based upon the tenant's failure to surrender possession at the end of the lease term, April 30, 1981. Of course, it may be that because these premises were initially rented as an "ARTIST'S STUDIO", they are subject to and the tenants are entitled to the benefits of the provisions of article 7-B of the Multiple Dwelling Law. In addition to conferring other benefits and protections upon "Loft Law" tenants, section 275 thereof as amended by chapter 889 (§ 6, subd b) of the Laws of 1980, entitled the tenant "at the expiration of his lease or other rental agreement, written or unwritten * * * to a lease for a term of not less than one year". However that amendment which by its terms was to apply to "any lease or rental agreement expiring after June eleventh, nineteen hundred eighty" (L 1980, ch 889, § 9), ceased to have any "force or effect and * * * terminat[ed] on the thirtieth day of June, nineteen hundred eighty-one". (L 1980, ch 889, § 8.) Thus, even if the tenant's lease was extended by statute for one year beyond its April 30, 1981 expiration so as to expire on April 30, 1982, it clearly had expired and was at an end when the notice to cure was served on or about July 20, 1982. Thus there was no existing lease to be preserved and no proper basis for the issuance of a *Yellowstone* injunction. Nor would RPAPL 753 (subd 4) be applicable since that section also contemplates an existing lease. Finally, it would appear that because this building is a "de facto" or "interim multiple dwelling" it is subject to the provisions of article 7-C of the Multiple Dwelling Law, and thus subject to the jurisdiction of the loft board established by section 282 of the Multiple Dwelling Law, and the tenant's continued occupancy of the premises is protected by section 286 of that law. Concur — Kupferman, J. P., Sullivan, Ross and Alexander, JJ.

Silverman, J., concurs in a separate memorandum as follows: Quite apart from the expiration of the lease, plaintiffs' motion for a preliminary injunction was properly denied. I agree with Special Term that plaintiffs have an adequate remedy if they are sued in the Civil Court, and therefore, there is no need for a declaratory judgment or an injunction in plaintiffs' favor. The injunction sought is a so-called *Yellowstone* injunction (*First Nat. Stores v Yellowstone Shopping Center,* 21 NY2d 630). Typically such injunctions have

been issued in cases where the landlord claims there has been a breach of some covenant in the lease; the tenant disputes it; the landlord serves a 10-day (or similar) notice of default and notice to cure the default with the threat that if the default is not cured within 10 days, the landlord will terminate the lease. In order that the tenant may obtain an adjudication as to whether he is in default under the lease, without running the risk that if he loses, it would be too late to cure the default, such *Yellowstone* injunctions have customarily been granted to tenants, staying the running of the 10-day period during the pendency of the action. A recent amendment to RPAPL 753 has, in my view, eliminated the need for such injunctions as to dwellings in the City of New York. As the Appellate Division, Second Department, said in *Nunez v 164 Prospect Park West Corp.* (92 AD2d 540, 540-541): "However, a recent amendment to RPAPL 753 (L 1982, ch 870, § 2, eff July 29, 1982, adding a new subd 4), in effect, provides that in a summary proceeding to recover possession of residential premises in the City of New York, based upon a claim that the tenant has breached a provision of the lease, the Civil Court must issue a 10-day stay of the warrant of eviction, during which time the tenant may cure the breach. While the amendment does not divest the Supreme Court of jurisdiction, it has eliminated the need for a separate injunction action in that court, since even if the landlord succeeds in a summary proceeding, the tenant still has a 10-day period to cure the breach (*Wilen v Harridge House Assoc.,* 116 Misc 2d 724). Therefore, the instant plaintiffs cannot demonstrate that they would suffer irreparable injury absent granting the preliminary injunction." I agree with the Appellate Division, Second Department. The obvious meaning and purpose of the amendment is to eliminate the need for these preliminary injunctions and to give the tenant precisely what *Yellowstone* would have given him, i.e., a period after the final determination of the action in which to cure the default. The statutory remedy is not inadequate because in a particular case the tenant may need more than 10 days after the adjudication to cure the breach: (a) For one thing, *Yellowstone* injunctions did not operate for more than 10 days after the adjudication. The *Yellowstone* injunction was merely "a stay tolling the notice to cure until a declaration of the parties' rights may be had". (*Podolsky v Hoffman,* 82 AD2d 763; accord *Wuertz v Cowne,* 65 AD2d 528.) Once the action was adjudicated, the notice to cure was no longer tolled, i.e., the tenant had 10 days or whatever was left of it to cure. (b) In the present case even the notice to cure did not require the tenant to cure the default within the period (here five days) specified. Rather it required the tenant either to cure within five days "or to commence such cure within Five days and to diligently and in good faith pursue such cure until each default is remedied". And it seems to me clearly within the powers of the Civil Court and the intent of the statute that the tenant shall not be required to do more. This is further in accord with the general provision of CPLR 2201: "Except where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just." The recent amendment of RPAPL 753 (subd 4) requiring a 10-day stay of issuance of the warrant "during which time the respondent may correct such breach", in effect gives the equivalent of a· *Yellowstone* injunction to every residential tenant proceeded against for claimed breach of a provision of his lease. There is thus no longer a need for the court to issue an injunction under the *Yellowstone* procedure. The continuation of the *Yellowstone* procedure would continue to impair the effectiveness of the summary proceeding remedy, with actions in the Supreme Court to enjoin actions in the Civil Court, etc., instead of having the whole dispute determined in the proceeding specifically designed for that purpose, the summary proceeding in the Civil Court.