**In re FAMILY SHOWTIME THEATRES, INC., Cordamanda Development Corp., Family Showtime Theatres of Levittown, Inc., Family Showtime Theatres of Bay Parkway, Inc., Debtors.**

Bankruptcy Nos. 085–50528–21 to 085–50531–21.

United States Bankruptcy Court, E.D. New York.

Jan. 29, 1986.

James W. Dougherty, P.C., Malverne, N.Y., for Larry Weiss Adv., Joseph Aragona & Sons, J.K. Elec. Co. and Marlin Refrigeration.

Paul Schimmel, Commack, N.Y., for LI Equipment Service and L.E. World Impex Co., Inc.

Schwartz, Sachs & Kamhi, Carle Place, N.Y. by Gary Sachs, for R.H. Belam.

Finkel, Goldstein & Berzow, New York City by Harold S. Berzow, for debtor.

Meiselman, Boland, Reilly & Pittoni, Mineola, N.Y. by M. John Pittoni, for Chemical Bank.

Shea & Gold, New York City by Michael E. Emrich and Daniel L. Carroll, for Landlord Toys R Us.

Zinker & Stern, Smithtown, N.Y. by Edward Zinker, for Landlord J & K Commack, Inc.

Kazdin, Weinstein & Bier, New York City (Craig Rieders, of counsel), for Landlord J.W. Mays, Inc.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court for decision are several motions.

One of the debtors in this consolidated proceeding, Family Showtime Theatres of Bay Parkway, Inc. ("Family Showtime Bay Parkway") is seeking, pursuant to 11 U.S.C. § 365(d)(4), to extend its time to either assume or reject its lease ("the Lease") with Toys "R" Us-Nytex, Inc. ("Toys R Us").

Toys R Us is not only opposing any such extension, but is seeking an order requiring the debtor to surrender the leased premises immediately to it. Toys R Us initially took the position that the Lease should be deemed rejected because of the failure of Family Showtime Bay Parkway to carry out the terms of a stipulation between them dated June 21, 1985. Toys R Us now is asking for an order (1) that the Lease was terminated pre-petition and therefore cannot be assumed; (2) alternatively, that it was terminated post-petition by Family Showtime Bay Parkway's failure to timely cure its defaults; (3) alternatively, that it should be deemed rejected because of the debtor's failure to comply with the terms of the Stipulation between the parties, dated June 21, 1985. Further, Toys R Us is asking that the automatic stay be terminated pursuant to 11 U.S.C. § 362 and that the premises covered by the Lease be surrendered immediately to Toys R Us.

All four debtors, including Family Showtime Bay Parkway, are seeking authority to borrow $300,000.00 from the Chemical Bank for the purpose of curing defaults in the Lease with Toys R Us and in a second lease held by the debtor operating in Levittown.

Toys R Us opposes the debtors' application to borrow money until the motion with respect to its lease is decided. All other creditors who appeared at the hearing on the loan favor it.

Family Showtime Theatres, Inc. is a publicly held corporation. The three other debtors are its subsidiaries. Each of the subsidiaries operates a family restaurant under the name "Chuck E. Cheese". The franchisor of these operations is now, itself, in Chapter 11. Cordamanda Development Corp. operates a restaurant in Commack; Family Showtime Theatres of Levittown, Inc. ("Family Showtime Levittown") in Levittown and Family Showtime Bay Parkway, in Brooklyn.

When the debtors filed for relief, they were indebted to Chemical Bank in the amount of $1,472,681.00, secured by their

accounts receivable, inventory, equipment and fixtures. The only substantial asset of the debtors not covered by the security agreement with Chemical Bank is stock held by the parent corporation in a corporation owning unimproved property in Massapequa, said to have a value of $600,000.00 and to have encumbrances totalling only $430,000.00, leaving an equity of $170,000.00. Also not presently covered by Chemical's lien are the leases of the debtor.

Apart from the money owed Chemical Bank, the debtor's schedules show debts of approximately $500,000.00.

The three restaurants are essentially cash businesses. The creditors have expressed great dissatisfaction with the manner of their operation by debtor. They are moving for the appointment of a trustee to replace present management because of their distrust. That motion is not now being decided.

### The Levittown and Brooklyn Leases

In connection with the Levittown property, Family Showtime Levittown is obligated to complete the construction of a parking lot which will cost approximately $50,000.00. Additionally, three mechanic liens have been filed against the real property, aggregating $59,484.00, which under the Levittown Lease the debtor must pay, or discharge. Thus, in order for Family Showtime Levittown to assume the Levittown Lease under § 365, as it wishes to do, it will require approximately $110,000.

There are problems also in connection with Brooklyn, which, according to Richard Berland, the Chairman of the Board and Chief Executive Officer of Family Showtime Theatres, Inc., is the most profitable of the three restaurants, represents an investment of two and a half million by the debtors, and can be sold for $1,100,000.00.

The Lease on the Brooklyn premises, which is for a ten-year term, commencing on May 1, 1983, obligated Family Showtime Bay Parkway to construct two elevators with accompanying shaftways at the premises. Although Family Showtime Bay Parkway has taken some steps to construct the elevators, it has not completed them. To complete the installation will take time and substantial funds. According to information supplied by the debtors, the elevator shafts, as presently constructed, do not meet the Building Code of the City of New York. To correct the situation will cost $46,200.00 and will take between six and eight weeks. After this is accomplished, the elevator company will require three months to complete the installation for which it will be due $124,500.00. The debtors estimate that it will take approximately $170,700.00 to complete the entire project.

### The Chemical Loan

It is to obtain the money to cure the defaults on the Levittown and Brooklyn Leases that the debtors seek to borrow $300,000.00 from Chemical Bank. As security, Chemical is asking an assignment of all the debtors' leases, a first lien upon all the debtors' inventory, fixtures, machinery, equipment, contract rights and general intangibles, plus a second mortgage in the principal sum of $300,000.00 on unimproved land owned by Family Showtime Theatres of Massapequa, Inc., to secure all debts owing from the debtors' both pre- and post-chapter 11 filing. Furthermore, Chemical Bank's $300,000.00 claim is to be given priority as an administration expense claim, over and above all other expenses of administration, except for those claims arising under § 330 of the Bankruptcy Code.

### The Brooklyn Notice of Termination

As already noted, Toys R Us denies that there still exists a lease for Family Showtime Bay Parkway to assume. Its position is that its lease has been terminated and must be surrendered to it.

If the Lease was terminated prior to the time that Family Showtime filed, it cannot be assumed. Any uncertainty that this is the law was ended by the 1984 Amendments to the Code. 11 U.S.C. § 541(b)(2) excludes from property of the estate "any interest of the debtor as a lessee under a lease of non-residential real property that

has terminated at the expiration of the stated term of such lease before the commencement of the case under this title . . ."

Toys R Us claims that the Lease was terminated in accordance with its provisions, in particular, Section 26. That section, insofar as relevant, reads as follows:

A. The following shall be defined and deemed as an "Event of Default: ". . . . (d) any failure of Tenant to perform any other of the terms conditions, or covenants of this Lease to be observed or performed by Tenant for more than thirty (30) days after written notice of such default shall have been served upon Tenant (or, in the event such default cannot be cured within thirty (30) days, then, if Tenant does not commence within said thirty (30) day period to attempt to cure said default and thereafter proceed with due diligence in curing the same.

\* \* \* \* \* \*

B. Upon the occurrence of any Event of Default, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

(i) Terminate this Lease, in which event Landlord shall so notify Tenant and Tenant shall immediately surrender the Demised Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have, enter upon and take possession of the Premises and expel or remove Tenant and any other person claiming under or through Tenant who may be occupying the Premises or any part there . . ."

On January 15, 1985, Toys R Us sent Family Showtime Bay Parkway a notice by certified mail that in the event Family Showtime Bay Parkway failed to complete installation of the elevators within 30 days of receipt of the letter, such failure would result in an "Event of Default" as defined in Section 26. On February 26, 1985, a second letter was sent headed "Notice of Termination of Sublease", which noted the failure to cure the default referred to in the earlier letter and advised Family Show-

time that pursuant to Section 26-B(i) of the Lease, Toys R Us elected to terminate the Lease and Family Showtime Bay Parkway was "required to immediately surrender the Demised Premises". Toys R Us stated that in default of such surrender, it would institute summary proceedings to recover possession.

Thereafter, in March, 1985, a summary proceeding was commenced in the Civil Court of the City of New York, Kings County, asking issuance of a final judgment awarding possession of the premises to Toys R Us and issuance of a warrant of eviction. This proceeding was repeatedly adjourned until June 21, 1985, when the parties entered into a stipulation, signed on August 8, 1985. In that stipulation, Family Showtime Bay Parkway agreed to complete the installation of the two elevators before October 14, 1985. Family Showtime Bay Parkway further stipulated that it "understands and agrees that time is of the essence with respect to [its] completion of the installation of the elevators by October 14, 1985". It agreed that if it failed to complete the work by that date, the summary proceeding would be tried on October 15, 1985 and that it would not seek any adjournment of said trial.

In the Stipulation, Family Showtime Bay Parkway also acknowledged that installation of the elevators was required under the terms of the Lease "to be completed prior to the service by [Toys R Us] of the notice of default upon which this [summary] proceeding is based".

As part of the Stipulation, Family Showtime Bay Parkway was allowed to continue occupying the premises *without prejudice* to the claim of Toys R Us that the Lease was terminated as of February 26, 1985. This occupancy was designated in the Stipulation as the "Extended Occupancy Period".

The Stipulation further provided that if Family Showtime Bay Parkway prevailed upon the trial, or if a settlement was reached, the Lease was to be deemed never to be terminated. Furthermore, if Family

Showtime Bay Parkway complied with all the terms and conditions of the Stipulation, the Lease was to be deemed in effect and the terms and provisions of the Stipulation were to constitute amendments to the Lease.

Finally, the Stipulation provided for $100,000.00 in rent credit to Family Showtime Bay Parkway in the event the elevators were constructed.

Seven days after Family Showtime Bay Parkway entered into the Stipulation, it petitioned for relief under the bankruptcy laws, which stayed all further proceedings in the Civil Court.

Toys R Us did not immediately seek relief from the Section 362 stay, doing nothing until Family Showtime Bay Parkway requested an extension of its time to assume or reject the Lease.

It is the position of Toys R Us that Section 26–B of the Lease created a conditional limitation and that upon transmittal of a notice of termination, as authorized by that section, the term of that lease came to an end.

■ The Court agrees that this would be the effect of a Section 26–B notice provided that a default existed giving rise to the right to transmit such notice. On the crucial facts, the record before this Court is inadequate.

Section 26–A sets up two categories of defaults: those susceptible of cure within 30 days and those not so susceptible. It is only with respect to the former that the lapse of 30 days without cure gives the Lessor the right to send a notice of termination. As to the latter category, a notice of termination can be sent only if the Tenant does not attempt within said 30 day period to cure the default and thereafter proceed with due diligence.

There is no evidence that the elevator default was capable of cure within 30 days. Indeed, what little is known indicates the contrary. If it were not so susceptible, then the mere lapse of 30 days without cure did not give Toys R Us the option to terminate. That option would have existed

only if Family Showtime Bay Parkway, subsequent to receiving the letter of January 25, 1985, failed to commence to attempt to cure said default and failed to proceed thereafter with due diligence. The record throws little, or no, light on what Family Showtime Bay Parkway did after receiving the letter. To determine whether Toys R Us had the option it purported to exercise to terminate the Lease would require a trial of the facts, which has not so far been had.

The strict construction this Court is placing on Section 26 is consistent with the principle that the Lease is to be construed against its draftsman to avoid the gross hardship of forfeiture of a lease. *Jones v. Gianferante*, 305 N.Y. 135, 138, 111 N.E.2d 419 (1953).

The concession by Family Showtime Bay Parkway in the June 21, 1985 Stipulation that it had had time prior to the receipt of the January 25, 1985 notice to install the elevators does not affect the foregoing conclusion. The default clause is not drafted in terms of the time required for cure pre-notice, but what cure post-notice needed. The obvious purpose was to give a lessee one last chance.

Apart from the terms of the Lease itself, Toys R Us could not unilaterally end the term of the Lease, which, therefore, was still subsisting when Family Showtime filed under Chapter 11.

■ Toys R Us attaches great importance to the fact that no *Yellowstone* injunction was secured. In *First National Stores, Inc. v. Yellowstone Shopping Center, Inc.*, 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968), New York Court of Appeals held that absent an injunction, the courts may not allow cure if the term has ended by virtue of a conditional limitation. But the only purpose of a *Yellowstone* injunction is to give a right to cure in the event the tenant loses on the merits. Securing a *Yellowstone* injunction permits the tenant to obtain an adjudication as to whether he is in default under the Lease, without running the risk that if he loses it will be too late to cure the default. *New-*

*mann v. Mapama Corp.*, 96 A.D.2d 793, 466 N.Y.S.2d 331, 334–35 (Silverman, J., concurring) (1st Dept.1983); *cf., Wuertz v. Cowne*, 65 A.D.2d 528, 409 N.Y.S.2d 232 (1st Dept.1978); *W.T. Associates v. Huston*, 123 Misc.2d 24, 472 N.Y.S.2d 562 (S.Ct.N.Y.Co.1984). Family Showtime Bay Parkway admittedly failed to secure a *Yellowstone* injunction. Therefore, if it was in default and the notice of termination was properly sent, its Lease is terminated without any opportunity to cure.

But Toys R Us appears to read *Yellowstone* as requiring an injunction simply to preserve the right to argue the merits. This is too broad a reading of the case. All it does is preserve the right to cure, despite a notice of termination should the tenant ultimately lose. If the tenant ultimately prevails, he has no need of the *Yellowstone* injunction because the notice to termination lacks a proper foundation.

■ What about the other grounds on which Toys R Us urges the Lease to have been terminated? Chief among these is the claim that the terms of the Stipulation have not been met, even if deemed extended by 11 U.S.C. § 108 for 60 days past the date of filing. Toys R Us reads the Stipulation as committing Family Showtime Bay Parkway to install the elevators by October 14, 1985. Assuming that Family Showtime Bay Parkway so agreed, it did not consent to having the Lease deemed terminated if it failed to carry out the commitment. The sole consequence provided for in the Stipulation was that the trial would proceed in the Civil Court, a result made impossible when resort was had to bankruptcy. To state it another way: The Stipulation did not amend the Lease and change its terms; it gave Toys R Us no new right of termination.

As to 11 U.S.C. § 108, it only affected the time for performance of the promises made in the Stipulation, which for the reasons already discussed, carry no right of termination.

There remains the last point urged by Toys R Us that the Lease was lost because of the failure of Family Showtime Bay Parkway to meet the requirements of 11 U.S.C. § 365(d)(3), which reads in relevant part:

"The trustee shall timely perform all the obligations of the debtor, except those specified in § 365(b)(2), arising from and after the order for relief under any unexpired lease of non-residential real property, until such lease is assumed or rejected, notwithstanding § 503(b)(1) of this Title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60 day period."

The obligation to install elevators was not one which arose within 60 days after the date of the order for the relief. The Stipulation, as noted earlier, is not the Lease, and it was the Stipulation, not the Lease, that committed Family Showtime Bay Parkway to install the elevators by October 14, 1985.

The conclusion that resolution of this question as to whether the Lease was terminated pre-petition requires a trial, either in this Court or in the Civil Court, has been reached most reluctantly because of the problems it creates both for Toys R Us and the debtors.

Family Showtime Bay Parkway cannot be required to commit itself to the investment which assumption of the Lease would require unless it knows that it has a lease. Therefore, it seems to this Court that there is no alternative to extending the time of Family Showtime Bay Parkway to assume or reject the Lease until 30 days after it is established that the Lease still exists to be assumed.

If the parties decide to return to the Civil Court for this determination, the Court will lift the § 362 stay for that purpose.

Until it is clear that the debtor can properly assume the Brooklyn Lease, the Court will not approve the proposed loan from the Chemical Bank. Subjecting the debtor's equity in the Massapequa property (through its stock in a subsidiary corporation) to a priority lien in favor of Chemical Bank will not be in the best interests of creditors, if the only result will be to pro-

vide the debtor with the money to cure the default on the Commack Lease. For that purpose, no more than $110,000.00 is required, which can be secured by selling or mortgaging the Massapequa property without subjecting all the debtors' assets to the pre-filing debt of Chemical, virtually insuring the unavailability of any estate for the general creditors.

To sum up, this Court is unable to determine on the record before it whether the Lease held by Family Showtime Bay Parkway was terminated pre-petition or not. Unless the Lease is still in existence, it cannot be assumed by Family Showtime Bay Parkway. Because the property is so valuable, Family Showtime should have a reasonable time to assume the lease should it be determined that the Lease was not terminated pre-petition. In view of the uncertainties as to the status of the Lease of Family Showtime Bay Parkway, it is impossible to determine the need or the value to the debtor of the $300,000.00 loan from Chemical. Accordingly, the Court is not at the present time authorizing any loan from Chemical on the terms laid down by Chemical.

Settle Order.