In re **FAMILY SHOWTIME THE-ATRES, INC., d/b/a Chuck E. Cheese, et al., Debtors.**

**FAMILY SHOWTIME THEATRES OF BAY PARKWAY, INC., Appellant,**

v.

**TOYS "R" US-NYTEX, INC., Appellee.**

**No. 86–CV–4072.**

United States District Court, E.D. New York.

Feb. 24, 1987.

---

Finkel, Goldstein & Berzow, New York City, for appellant-debtor; Harold S. Berzow and Kevin J. Nash, of counsel.

Shea & Gould, New York City, for appellee; Daniel L. Carroll and Michael E. Emrich, of counsel.

## DECISION AND ORDER

BRAMWELL, District Judge.

Family Showtime Theatres of Bay Parkway, Inc. (hereinafter "Family Showtime") appeals from an order of the United States Bankruptcy Court, Honorable Cecelia H. Goetz, which held, *inter alia*, that Family Showtime's lease had terminated prior to Family Showtime's filing of a petition for relief under Chapter 11 of the Bankruptcy Code, that Family Showtime therefore had no lease interest to assume or reject, and that Family Showtime would be required to vacate and surrender possession of the leased premises. For the reasons that fol-

low, the order of the Bankruptcy Court is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Family Showtime, presently a debtor under Chapter 11 of the Bankruptcy Code, operates a "Chuck E. Cheese" restaurant and amusement arcade franchise on the second floor of the Bay Parkway Shopping Center in Brooklyn, New York. The restaurant-arcade premises are subleased to Family Showtime by Toys "R" Us-Nytex, Inc. (hereinafter "Toys 'R' Us"), which operates a large toy store adjacent to the restaurant-arcade. Under section 10(B) of the lease, Family Showtime was obligated, *inter alia*, to install two elevators on the leased premises. Although numerous other improvements were made by Family Showtime, the elevators were never installed.

On January 15, 1985, Toys "R" Us sent a letter to Family Showtime formally notifying Family Showtime that the failure to install elevators would be considered an "Event of Default" under section 26 of the lease. Section 26 provides, in relevant part, as follows:

A. The following shall be defined and deemed as an "Event of Default:" . . . (d) any failure of Tenant to perform any other of the terms, conditions, or covenants of this Lease to be observed or performed by Tenant for more than thirty (30) days after written notice of such default shall have been served upon Tenant (or, in the event such default cannot be cured within thirty (30) days, then, if Tenant does not commence within said thirty (30) day period to attempt to cure said default and thereafter proceed with due diligence in curing the same). . . .

B. Upon the occurrence of any Event of Default, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

---

1. The facts of this case are also discussed in the two opinions of the Bankruptcy Court. *See In re Family Showtime Theatres, Inc.,* 67 B.R. 542 (Bankr.E.D.N.Y.1986) (*"Family Showtime II"*);

*In re Family Showtime Theatres, Inc.,* 58 B.R. 679 (Bankr.E.D.N.Y.1986) (*"Family Showtime I"*).

(i) Terminate this Lease, in which event Landlord shall so notify Tenant and Tenant shall immediately surrender the Demised Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have, enter upon and take possession of the Premises and expel or remove Tenant and any other person claiming under or through Tenant who may be occupying the Premises or any part thereof....

The January 15 letter permitted Family Showtime the prescribed 30 days in which to cure the default, reserving all rights under section 26 if the cure was not effected within the 30–day period. On February 26, 1985, after Family Showtime failed to cure the default within 30 days of the January 15 letter, Toys "R" Us served Family Showtime with a letter captioned "NOTICE OF TERMINATION OF SUBLEASE," which advised Family Showtime that Toys "R" Us was terminating the lease pursuant to section 26(B)(i) as of February 26, 1985.

In March, 1985, Toys "R" Us commenced a summary proceeding in New York City Civil Court, Kings County, to evict Family Showtime, which had refused to surrender the premises. The action was adjourned several times in April, May, and June of 1985 in contemplation of a mutually agreeable disposition. During the course of these adjournments, Toys "R" Us continued to accept rent payments from Family Showtime but expressly reserved its right to claim that the lease was terminated as of February 26, 1985. Throughout that period of time, Family Showtime gave repeated assurances that the default would be cured. Ultimately, the parties entered into a stipulation and order, dated August 8, 1985, pursuant to which trial on· the summary eviction proceeding was adjourned until October 15, 1985, and Family Showtime was to cure its default by October 14, 1985. Paragraph five of the stipulation and order further provided as follows:

[Family Showtime's] occupancy of the premises subsequent to February 26, 1985 shall be referred to as the "Extended Occupancy Period" and, without prejudice to [Toys "R" Us'] claim that the Lease was terminated as of February 26, 1985, [Family Showtime's] use and occupancy of the premises during the Extended Occupancy Period shall continue to be governed by the terms and provisions of the Lease, except as expressly modified herein.

Within a week after entering into the stipulation, on August 15, 1985 Family Showtime filed a petition for relief under Chapter 11 of the Bankruptcy Code, thereby effecting an automatic stay of the summary eviction proceeding pursuant to section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a). Subsequently, Family Showtime moved pursuant to 11 U.S.C. § 365(d)(4) to extend its time to either assume or reject its lease with Toys "R" Us. Toys "R" Us not only opposed the request for an extension of time, but also cross-moved for an order declaring: (1) that the lease was terminated prior to Family Showtime's filing for Chapter 11 relief and therefore could not be assumed; (2) alternatively, that the lease was terminated post-petition by Family Showtime's failure to cure its defaults; or (3) alternatively, that the lease be deemed rejected due to Family Showtime's failure to comply with the terms of a stipulation entered into by the parties on June 21, 1985. Toys "R" Us further requested that the automatic stay of the Civil Court summary proceeding be terminated and that the leased premises be surrendered immediately to Toys "R" Us.

After issuing two opinions, the second of which was written after a three-day trial, *see In re Family Showtime Theatres, Inc.,* 58 B.R. 679 (Bankr.E.D.N.Y.1986) ("*Family Showtime I*"); *In re Family Showtime Theatres, Inc.,* 67 B.R. 542 (Bankr.E.D.N.Y.1986) ("*Family Showtime II*"), the Bankruptcy Court ultimately entered an order on October 29, 1986, which held: (1) that the lease between Family Showtime and Toys "R" Us was effectively terminated on February 26, 1986; (2) that Family Showtime's application for an extension of time in which to assume or reject the lease was denied; and (3) that pursuant to 11 U.S.C. § 362(d) the automatic stay was terminated and Family Showtime was to va-

cate and surrender possession of the premises within 30 days of entry of the order.

After the Bankruptcy Court denied Family Showtime's motion for a stay pending appeal to the District Court, this Court granted the stay and ordered an expedited briefing schedule. Because the Court agrees with the findings and conclusions of the Bankruptcy Court, the Court now affirms the order of the Bankruptcy Court.

## II. DISCUSSION

■ At its core, this appeal presents the question of whether, under New York law, the default and termination provisions of the lease between Family Showtime and Toys "R" Us created a condition (often referred to as a condition subsequent) or a conditional limitation. If the lease provision is construed as a conditional limitation, then the lease was terminated prior to Family Showtime's filing of its petition for Chapter 11 relief, and the Bankruptcy Court properly held that Family Showtime, as a Chapter 11 debtor, possessed no lease interest to assume or reject. If, on the other hand, the lease provision is construed as a condition subsequent, then Family Showtime retained an interest in the lease when it filed for Chapter 11 relief, and would have been entitled, as a Chapter 11 debtor, to assume or reject that lease interest. Family Showtime argues that the lease provision is a classic condition subsequent, and alternatively argues that Toys "R" Us' acceptance of rent payments after the purported termination of the lease constituted an intentional waiver of its right to claim that the lease had already been terminated. The Court is unpersuaded by either of these contentions.

Although the distinction between a conditional limitation and a condition subsequent is a murky one that has produced confusing results under New York law, the general rule has been summarized as follows:

If a clause provides that a lease shall terminate upon the occurrence of an event, only at the option of the landlord, then the clause is a condition [subsequent]. The lease must of necessity continue until the exercise of the landlord's option to forfeit the lease, and there is only one way in which such election can be exercised. That is by actual re-entry.

If, however, a clause clearly provides that upon the occurrence of an event the lease shall expire as if the lease by its terms had been limited to that time, then the clause is a conditional limitation. It is immaterial whether the event is an objective contingency, or an event set in motion by the landlord, or an event which depends upon the volition of the landlord. A conditional limitation must have the effect of definitely fixing an earlier date for the expiration of the lease than the original term prescribed by the lease.... While the lease may grant a landlord an option as to whether he will avail himself of the conditional limitation, it must be clearly provided that once he exercises this option, the lease will then come to an end at the earlier date fixed by the happening of the stipulated contingency, or the lapse of the period of time fixed by the landlord's notice, as the lease may prescribe.

2 J. Rasch, *New York Landlord and Tenant* § 752 (2d ed. 1971).

As both parties would apparently agree, New York cases distinguishing between conditional limitations and conditions subsequent have been far from consistent.[2]

---

2. *Compare, e.g., In re Adirondack Ry. Corp.*, 28 B.R. 251, 260 (Bankr.N.D.N.Y.1983) (summary proceeding unavailable because lease-termination clause created a condition subsequent rather than a conditional limitation), *appeal dismissed*, 726 F.2d 60 (2d Cir.1984); *In re Delta Motor Hotel of Syracuse, Inc.*, 10 B.R. 585, 592–94 (Bankr.N.D.N.Y.1981) (dictum) (lease interest of Chapter 10 debtor did not terminate prepetition, and was therefore assumable, because lease-termination clause created a condition subsequent); *Norman S. Riesenfeld, Inc. v. R.W.*

*Realty Co.*, 223 A.D. 140, 145–48, 228 N.Y.S. 145, 150–53 (1st Dep't 1928) (summary proceeding unavailable because lease-termination clause created a condition subsequent rather than a conditional limitation); *In re Guaranty Building Co.*, 52 A.D. 140, 145, 64 N.Y.S. 1056, 1059 (4th Dep't 1900) (same); *Janes v. Paddell*, 67 Misc. 420, 422–24, 122 N.Y.S. 760, 761–63 (App.Term 1910) (same); *Nathan's Famous, Inc. v. Frankorama, Inc.*, 70 Misc.2d 452, 455, 333 N.Y.S.2d 708, 712 (N.Y.C.Civ.Ct., Richmond County 1972) (summary proceeding unavailable because

Both parties have alerted the Court to numerous cases supporting their respective interpretations of the lease in the present case. After reviewing these cases and others, the Court is convinced that the weight of authority supports the conclusion that the lease provision in the present case created a conditional limitation.

In addition, of particular significance is the relatively recent decision of New York's Court of Appeals in *First National Stores, Inc. v. Yellowstone Shopping Center, Inc.*, 21 N.Y.2d 630, 237 N.E.2d 868, 290 N.Y.S.2d 721 (1968), which involved facts and a lease-termination clause closely analogous to the present case. The lease-termination clause in *Yellowstone* provided as follows:

> In case lessee shall default in the performance of any covenant or agreement herein contained, and such default shall continue for ten (10) days after receipt by the lessee of written notice thereof given by lessor, then lessor, at the option of lessor, may declare said term ended, and may re-enter upon the leased premises either with or without process of law, and remove all persons therefrom.

*See id.* at 634–35, 237 N.E.2d at 869, 290 N.Y.S.2d at 722–23. When the tenant in *Yellowstone* failed to install a sprinkler system as required by the lease, the landlord ultimately sent the tenant a 10–day notice of default. After the 10–day period had expired without the tenant having attempted to cure the default, the landlord sent to the tenant a notice of termination of the lease. Although the tenant had commenced litigation against the landlord prior to receiving the notice of termination, plaintiff had not obtained a stay or a restraining order against the landlord prior to receiv-

ing the notice. *See id.* at 635, 237 N.E.2d at 869, 290 N.Y.S.2d at 723.

Both the Appellate Division and the Court of Appeals held that the landlord "properly invoked the applicable provisions for terminating the lease." *Id.* at 637, 237 N.E.2d at 870, 290 N.Y.S.2d at 724. As the Court of Appeals noted, the lease was effectively terminated "since the tenant did not obtain a temporary restraining order *before* the landlord had mailed the notice of termination, in accordance with the lease terms, and until after the 10–day default period had expired." *Id.* (emphasis in original). The court continued:

> Here, the lease had been terminated in strict accordance with its terms. The tenant did not obtain a temporary restraining order until after the landlord acted. The temporary restraining order merely preserved the *status quo* as of the date it was obtained. Once the Appellate Division determined that the tenant had in fact defaulted by not installing the sprinkler system, the conclusion had to be drawn that the lease was terminated in accordance with its terms.

*Id.* at 637, 237 N.E.2d at 870, 290 N.Y.S.2d at 725. For similar reasons, the lease in the present case was properly terminated by Toys "R" Us on February 26, 1985.

The lease-termination provision in the present case is, in all material respects, essentially similar to that in *Yellowstone.* Indeed, where different, the *Yellowstone* lease is closer to a classic condition subsequent. Moreover, in the present case, the landlord Toys "R" Us proceeded in virtually the same manner as did the landlord in *Yellowstone.* Finally, Family Showtime's filing for Chapter 11 relief, thereby obtain-

---

lease-termination clause created a condition subsequent); *and Mayro Properties Assocs. v. Morganroth,* 38 Misc.2d 164, 166–67, 235 N.Y. S.2d 964, 967 (County Ct., Oneida County 1963) (same) *with Perrotta v. Western Regional Off-Track Betting Corp.,* 98 A.D.2d 1, 3–5, 469 N.Y. S.2d 504, 506–07 (4th Dep't 1983) (distinguishing between two provisions in same lease and finding the latter a conditional limitation); *Lonas v. Silver,* 201 A.D. 383, 384–86, 195 N.Y.S. 214, 215–16 (2d Dep't 1922) (summary proceeding available because lease-termination clause created a conditional limitation); *Brause v. 2968*

*Third Avenue, Inc.,* 43 Misc.2d 691, 691, 251 N.Y.S.2d 974, 974 (App.Term., 1st Dep't 1964) (per curiam) (lease-termination clause held a conditional limitation), *aff'g* 41 Misc.2d 348 (N.Y.C.Civ.Ct., Bronx County 1963); *Burnee Corp. v. Uneeda Pure Orange Drink Co.,* 132 Misc. 435, 443–47, 230 N.Y.S. 239, 251–55 (App. Term, 1st Dep't 1928) (same); *Martin v. Crossley,* 46 Misc. 254, 256, 91 N.Y.S. 712, 714 (App. Term. 1905) (same); *and Louis J. Ehret Holding Corp. v. Anderson Galleries, Inc.,* 138 Misc. 722, 726–28, 247 N.Y.S. 235, 240–41 (N.Y.C.Munic.Ct. 1930) (same).

ing an automatic stay of Toys "R" Us' eviction proceedings, occurred only after Toys "R" Us had sent the termination notice, and is therefore analogous to the attempt by the tenant in *Yellowstone* to obtain a temporary restraining order against the landlord's institution of summary proceedings.

Although the court in *Yellowstone* did not explicitly determine whether the lease termination provision was a conditional limitation or a condition subsequent, the conclusion is inescapable that the court, at least implicitly, regarded it as the former. Had the court considered the clause a condition subsequent, the court's decision would make no sense. If the clause was a condition subsequent, then the landlord's sending of the notice of termination would · have been ineffective, because the lease would have remained in force until the landlord enforced a forfeiture of the lease by re-entry or commencement of a formal action in ejectment. *See, e.g., Beach v. Nixon,* 9 N.Y. 35, 36 (1853). Thus, the lease would not have terminated prior to the tenant's effort to restrain the landlord.

Instead, the *Yellowstone* court held that the lease in fact had terminated prior to tenant's effort to restrain the landlord, and reversed the Appellate Division's decision reviving the lease subsequent to that termination. The court concluded its opinion as follows:

> The sympathetic attitude of the majority below is understandable, but must be rejected. Article Twelfth of the lease, which gives the landlord the right to terminate after a 10-day notice of default, is neither harsh nor inequitable; a landlord's right to terminate a lease based upon a tenant's breach of his covenant is commonplace. In essence, this clause allowed the landlord to accelerate the term of the lease if the tenant failed, after notice, to cure his default.... "Rejection of plaintiffs' legal right could rest only on compassion for defendant's negligence. Such a tender emotion must be exerted, if at all, by the parties rather than by the court.... *Stability of contract obligations must not be undermined by judicial sympathy.* To allow

this judgment to stand would constitute an interference by this court between parties whose contract is clear."

> Should we hold that the termination of this lease is harsh and inequitable, then the same conclusion can be reached in every instance where a landlord exercises his contractual rights, and, in that event, the right of termination or any other right specified in a lease would be rendered meaningless and ineffectual.

*Yellowstone, supra,* 21 N.Y.2d at 637–38, 237 N.E.2d at 871, 290 N.Y.S.2d at 725–26 (citations omitted).

In the present case, accepting Family Showtime's position would require the court to impose the same type of declaratory and equitable relief so emphatically rejected by New York's Court of Appeals in *Yellowstone.* Accordingly, this Court is compelled to uphold the Bankruptcy Court's determination that the lease had terminated prior to Family Showtime's filing for Chapter 11 relief.

██ Turning to Family Showtime's alternative argument, this Court also agrees with the Bankruptcy Court's conclusion that Toys "R" Us did not waive its rights by accepting rent payments after Family Showtime's default. Although the general rule in New York has long been that a landlord's acceptance of rent with knowledge of a tenant's forfeiture results in a waiver of the forfeiture, *see, e.g., Murray v. Harway,* 56 N.Y. 337, 342 (1874); *Collins v. Hasbrouck,* 56 N.Y. 157, 166 (1874); *Ireland v. Nichols,* 46 N.Y. 413, 417 (1871), that rule must yield in appropriate circumstances where the parties clearly intended no waiver. In the present case, notwithstanding Family Showtime's default, Toys "R" Us agreed to generous extensions of time for Family Showtime to commence a cure. At all times, however, Toys "R" Us was meticulous in reserving its rights, both in its letters to Family Showtime and in the Civil Court stipulation dated August 8, 1986. Because Toys "R" Us so carefully protected its rights, the cases cited by Family Showtime, *In re Buchet Restaurant Corp.,* No. 86–B–11565 (Bankr.S.D.N.Y.)

(oral decision in pending case), and *Taylor v. Eli Haddad Corp.*, 118 Misc.2d 253, 261, 460 N.Y.S.2d 886, 893 (Sup.Ct.N.Y.County 1983), are clearly distinguishable.

## III. CONCLUSION

Based on the foregoing analysis, the order of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.