**In re EMILIO CAVALLINI, LTD., Debtor.**

**Bankruptcy No. 89 B 13320 (CB).**

United States Bankruptcy Court, S.D. New York.

March 22, 1990.

---

Shapiro & Shapiro, Hackensack, N.J., for debtor; by John P. DiIorio, of counsel.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for Creditors' Committee; by Robin J. Kantor, of counsel.

Graubard Mollen Horowitz Pomeranz & Shapiro, New York City, for Madison Tower Associates, Landlord; by Jack Weinberg, John P. Sheridan, of counsel.

## DECISION DETERMINING WHETHER DEBTOR'S LEASE IS EXECUTORY CONTRACT

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

Debtor, Emilio Cavallini, Ltd. ("Cavallini"), has moved, pursuant to § 365(d)(4) of the Bankruptcy Code (the "Code") to extend its time to assume or reject a non-residential real property lease. The landlord, Madison Tower Associates ("Madison Tower"), has filed a cross-motion for an order: (1) vacating the automatic stay and the Order of Bankruptcy Judge Daniel Moore of the Bankruptcy Court of the District of New Jersey, dated July 17, 1989 (which extended debtor's time to assume or reject until a determination is made by this Court) pursuant to § 362(d)(1) and (d)(2)(A) of the Code; (2) ordering that Cavallini surrender possession of the leased space to Madison Tower; and (3) imposing sanctions against Cavallini and its attorneys pursuant to Rule 11 of the Fed.R.Civ.P., Bankruptcy Rule 9011, and 28 U.S.C.A. § 1927.

Before a decision can be rendered on Cavallini's motion to extend time to assume or reject, a determination must be made as to whether or not Cavallini retained an assumable interest in the non-residential lease for real property as of the date of the filing of the bankruptcy petition. This decision addresses that sole issue.

### Facts

Cavallini and Madison Tower entered into a nonresidential lease agreement (the "Lease") (Spahi Affidavit, Exhibit A) dated March 31, 1988, for real property located at 535 Madison Avenue, New York (the "Premises"). Paragraph 17 of the Lease provides that in the event of a default by Cavallini, Madison Tower may serve upon Cavallini written notice, upon five (5) days' notice, specifying the nature of the default ("Notice of Default"). If Cavallini does not at least commence to cure such default

within the five (5) day period, Madison Tower may serve a written three (3) day notice of cancellation of the Lease upon Cavallini ("Notice of Termination") and at the end of said three (3) day period, the lease shall be deemed expired.

Subsequent thereto, certain disputes arose between Cavallini and Madison Tower.[1] Based on these disputes, Madison Tower served Cavallini with a Notice of Default, dated February 22, 1989. (Affidavit of John Spahi, Exhibit B.) In connection thereto, Madison Tower commenced an action in the New York City Civil Court, New York County, Landlord and Tenant, Index No. 79221/89. Cavallini, immediately thereafter, commenced proceedings against Madison Tower in the Supreme Court, State of New York, New York County, Index No. 04526/89 and on the same day an order to show cause (Spahi Affidavit, Exhibit B) was entered by the Supreme Court, State of New York, which, *inter alia*, temporarily restrained Madison Tower from terminating the Lease or from disturbing the tenancy (both Madison Tower's and Cavallini's Civil Court actions collectively referred to as the "Civil Court Suits").

In full settlement of all disputes, Cavallini and Madison Tower entered into a "Settlement Agreement," (Mahler Affidavit, Exhibit F), dated June 2, 1989, which provided for, *inter alia*, the dismissal of the Civil Court Suits. (Settlement Agreement at 2.) The Settlement Agreement further provides that the "tenancy of the space ... was pursuant to a lease agreement dated March 31, 1988 ... and ... [that such lease] has been duly terminated." (Settlement Agreement at 4.) Furthermore, the Settlement Agreement provides for: (1) an immediate entry of a final judgment in Madison Tower's favor awarding Madison Tower possession of the Premises; and (2) the immediate issuance of a warrant of

eviction *but* the execution of such warrant was to be stayed until July 20, 1989, the date by which Cavallini was to either vacate the Premises or cure all defaults. (Settlement Agreement at 3.) Paragraph 8 of the Settlement Agreement did, however, contain a cure provision whereby if Cavallini performed certain acts by July 20, 1989, the date by which it had to vacate the Premises, "the Judgment [would] be vacated [and] the Lease ... reinstated *nunc pro tunc....*" (Settlement Agreement at 6.) Judgment was entered pursuant to the Civil Court stipulation and a warrant of eviction was issued by the New York City Civil Court County of New York on about June 27, 1989 (the "Judgment"). (Madison Tower's Memorandum in Opposition, Exhibit D.)

On July 17, 1989 (the "Filing Date"), before the time in which Cavallini could cure had run, Cavallini filed a bankruptcy chapter 11 petition. Cavallini, subsequent to the filing of the bankruptcy petition, has moved to extend its time to assume or reject the Lease.[2] Madison Tower has cross-moved to vacate the automatic stay and for sanctions against Cavallini and its attorneys.

As previously stated, before addressing the merits of Cavallini's motion to extend time to assume or reject the Lease, it is necessary to make the threshold determination as to whether there existed, at the time of the filing date, an assumable executory non-residential lease. Specifically at issue is whether a debtor has an assumable interest in a lease where the lease has been deemed terminated, prior to the filing of a bankruptcy petition, by a court approved stipulation, rather than by the terms of the lease itself, and where such stipulation allows the debtor a period in which to cure all prior defaults and thereby reinstating in lease, but where the debtor files a petition

---

1. These disputes are the subject of a separate notice of motion filed by Cavallini, scheduled to be heard on March 14, 1990, in which it seeks to expunge certain mechanic's liens.

2. The case has been transferred to this District from the District of New Jersey where it was originally filed. Pursuant to an Order of trans-

fer (Affidavit of Mahler, Exhibit A), Cavallini's motion for an extension of time to assume or reject the Lease has been transferred to this District for resolution and the time has been extended until such time when this Court renders a decision on the motion.

in bankruptcy prior to the running of the cure period.

## DISCUSSION

■ Section 365 of the Code vests in a debtor in possession the power to assume or reject an executory contract and/or an unexpired lease.[3] This section, however, applies only where the contract or lease is in existence as of the commencement of the bankruptcy case. If the contract or lease has terminated prior to the commencement of the bankruptcy case, clearly there is nothing for the debtor in possession to assume or reject. The controversy at hand stems from the fact that a stipulation was entered into, pre-petition, between Cavallini and Madison Tower which deemed the Lease terminated as of the date therein, but which allowed Cavallini the opportunity to cure by a certain date and thereby re-established, retroactively, the landlord-tenant relationship. Madison Tower claims that a plain reading of the Settlement Agreement clearly leads to the conclusion that the Lease had terminated pre-petition and, despite the cure provision Cavallini did not retain an assumable interest in the Lease as of the filing date. Naturally, Cavallini vehemently objects to Madison Tower's characterization of the Lease as terminated as of the Filing Date since the cure provision did allow for the *nunc pro tunc* reinstatement of the Lease.

■ In making a determination as to whether the Lease terminated pre-petition, State law, in this case New York State law, must be consulted. *In re Mako, Inc.*, 102 B.R. 814, 817 (Bankr.E.D.Okla.1988); *In re W.A.S. Food Service Corp.*, 49 B.R. 969, 971 (Bankr.S.D.N.Y.1985); *Ehre v. People (In re Adirondack Ry. Corp.)* 28 B.R. 251, 259 (Bankr.N.D.N.Y.1983). There are two points in time when the Lease could have possibly terminated: (1) when Madison Tower sent Cavallini the Notice of Default; and (2) at the time the Settlement Agreement was entered into.

**3.** (a) Except as provided in sections 765 and 766 of this title in subsections (b), (c) and (d) of this section, the trustee, subject to the court's ap-

■ Clearly, the Lease did not terminate when Madison Tower sent Cavallini the Notice of Default. Under paragraph 17 of the Lease, Madison Tower had to follow a two step approach in order to effectively terminate the Lease. First, Madison Tower had to serve upon Cavallini written notice, upon five (5) days' notice, specifying the nature of the default. If Cavallini failed to timely commence to cure, Madison Tower could, at its option, terminate the Lease by giving Cavallini three (3) days' notice. This clause, paragraph 17, creates a condition subsequent rather than a conditional limitation. In attempting to formulate a definition of conditions subsequent, one court noted:

> [W]here the lease provision gave the landlord an option and an election by the landlord was necessary to terminate the lease, the term was not void but voidable and the lease only created a condition subsequent. (Footnote omitted.)

*In re Delta Motor Hotel of Syracuse, Inc.*, 10 B.R. 585, 593 (Bankr.N.D.N.Y.1981); *see also, In re Adirondack Ry.*, 28 B.R. at 260; *cf., Pisarek v. Sikora*, 29 Misc.2d 457, 216 N.Y.S.2d 202, 203 (Cty.Ct. Niagra 1961) ("A conditional limitation exists when the lease provides that it shall terminate upon the happening of an event ... without any further election, entry or re-entry.).

Madison Tower never exercised its option to terminate the Lease because before it was able to serve the Notice of Termination, Cavallini obtained an order temporarily restraining Madison Tower from taking any further action to terminate the Lease. Accordingly, the Lease never expired by operation of its own terms.

The next step is to determine whether the lease terminated as of the date the Settlement Agreement was signed by the parties. The court, in *Grand Hudson Corp. v. GSVC Restaurant Corp., (In re GSVC Restaurant Corp.)*, 10 B.R. 300 (S.D.N.Y.1980) noted:

> Undoubtedly a trustee or a debtor in possession under the bankruptcy laws

proval, may assume or reject any executory contract or unexpired lease with the debtor. 11 U.S.C. § 365(a).

may assume and protect whatever rights the debtor had as of the time of the filing. If the termination of a lease has not been completed, or if it can be reversed by application of state procedures (so that the matter is still *sub judice*), the trustee or debtor in possession may still assume such rights and pursue them.

*Id.* at 302 (citations omitted); *quoted in, Irving Byelas Irrevocable Trust v. KDT Indus., Inc. (In re KDT Indus., Inc.)* 32 B.R. 852, 856 (Bankr.S.D.N.Y.1983).

■ In the instant case, pursuant to New York Law the Lease was not irredeemably terminated despite the fact that the Settlement Agreement states that the Lease is terminated and provides for the issuance of the warrant of eviction. Under § 749(3)[4] of the New York Real Property Actions and Proceedings Law ("N.Y.R.P.A.P.L."), the issuance of a warrant of eviction cancels the lease agreement and annuls the landlord-tenant relationship. That section, however, goes on to allow the courts to vacate the unexecuted warrant of eviction where "good cause" has been sufficiently demonstrated. *Korenman v. Barr (In re Richards Pontiac, Inc.)*, 6 B.R. 773, 776 (Bankr.E.D.N.Y.1980). Courts have interpreted this clause as creating an equitable interest of possession in the debtor/tenant which is subject to the automatic stay embodied in § 362 of the Code. *In re GSVC Restaurant Corp.*, 10 B.R. 300, 302 (S.D.N.Y.1980); *In re Lane Foods, Inc.*, 213 F.Supp. 133, 135 (S.D.N.Y.1963) (the court found that the debtor had a post-petition possessory interest in lease where warrant was issued, pre-petition, but not executed as of the time of filing); *In re W.A.S. Food Service Corp.*, 49 B.R. at 972; *In re Onio's Italian Restaurant Corp.*, 42 B.R. 319, 320 (Bankr.S.D.N.Y.1984).

■ According to the line of cases cited above, Cavallini retained, at the minimum, a possessory interest in the Lease as of the Filing Date. Absent the Settlement Agreement, Cavallini, as debtor in possession, would have inherited, at the absolute minimum, the right to seek a vacatur of the warrant of eviction. *In re W.A.S.*, 49 B.R. at 972. The cure provision in the Settlement Agreement, however, gave Cavallini an assumable interest in the executory Lease. A contrary conclusion would not be in accordance with the terms of the Settlement Agreement itself. Madison Tower correctly stated, at the March 1 hearing, that this Court must abide by the terms of a court approved stipulation that has been signed by the parties. (Transcript of March 7, 1990, hearing at 4, citing *Suarez v. Ward*, 896 F.2d 28, 31 (2d Cir. Feb. 1990)). A determination that Cavallini retained some interest in the Lease as of the Filing Date is not contrary to the terms of the Settlement Agreement. The cure provision, embodied in paragraph 8, in and of itself gave Cavallini a continuing interest in the Lease until the date by which Cavallini had to either vacate the Premises or cure all defaults. Pursuant to a cure by Cavallini, the Lease would be reinstated *nunc pro tunc* (¶ 8 of Settlement Agreement). Unlike many other situations where the debtor must return to court to vacate the warrant of eviction, here the warrant of eviction is automatically vacated upon timely cure of all defaults. The Lease cannot possibly be deemed completely and irredeemably terminated given this cure provision.

The court in *In re DeSantis*, 66 B.R. 998 (Bankr.E.D.Pa.1986), a case factually similar to the instant case, recognized that the right to cure defaults represents an interest in a lease and therefore property of the estate. In that case, just like in the instant case, the landlord instituted eviction proceedings against the tenant but prior to trial, the parties entered into a stipulation which granted the tenant the right to reinstate the lease by curing all defaults within a specified time frame. Subsequent thereto, but before the time to cure had run, an

---

**4.** Section 749(3) of N.Y.R.P.A.P.L. provides in pertinent part:

The issuing of a warrant, for the removal of a tenant cancels the agreement under which the person removed held the premises, and *annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.* (Emphasis supplied.)

involuntary petition was commenced against the tenant. *Id.* at 999. The landlord, pursuant to a motion for relief from the stay, contended that the lease had been effectively terminated. *Id.* at 1002. The Court denied the motion and concluded that the lease had not been effectively terminated prior to the bankruptcy. *Id.* at 1003. The court declared

> ... the termination of the lease was not completed at the time the bankruptcy was filed because there was an agreement under which the debtors were entitled to cure their delinquency and reinstate the lease. The right to cure had not yet expired when the bankruptcy was filed. Therefore, any 'termination' of the lease in connection with the eviction process was still subject to reversal on July 7, 1986, the date the bankruptcy petition was filed. It follows that there is an assumable lease under § 365 and property of the estate which is subject to the automatic stay under section 362(a) (citations omitted).

*Id., see also, Bistrian v. Easthampton Sand & Gravel Co., Inc.,* 25 B.R. 193 (Bankr.E.D.N.Y.1982).

In accord with the holding and reasoning in *DeSantis,* this Court holds that the Lease was assumable as of the filing date by virtue of the cure provision contained in the Settlement Agreement.

Madison Tower cites *Family Showtime Theatres v. Toys "R" Us (In re Family Showtime Theatres, Inc.)* 72 B.R. 38 (E.D. N.Y.1987) in support of its opposing view. *Family Showtime,* however, is clearly distinguishable from the facts at hand. In that case the landlord exercised, pre-petition, its right to terminate the lease, pursuant to a clause in the lease which created a conditional limitation, and commenced summary proceedings to evict the debtor. *Id.* at 39–40. Subsequent thereto, the debtor and landlord entered into a stipulation which adjourned the summary proceedings and which gave the debtor an opportunity to cure all defaults. *Id.* If the debtor exercised its right to cure, the lease would be deemed in effect. The stipulation itself, however, recognized the fact that the lease

had terminated by operation of its own terms prior to the date of the stipulation. *Id.* at 43. In the instant case, as stated above, the Lease never terminated by operation of its own terms because the landlord failed to follow the procedure set forth in the Lease for its accelerated termination. The Court in *Family Showtime* did not have to go beyond the terms of the lease itself whereas this Court must take its investigation one step further and consider the terms of the Settlement Agreement. After all, it is the Settlement Agreement which establishes the termination of the Lease. Moreover, *Family Showtime* is not controlling here because that bankruptcy case was controlled by the former Bankruptcy Act which did not contain a provision like § 365 of the Code. Therefore, the issue of whether the interests created in the Settlement Agreement were assumable by the debtor was never addressed in *Family Showtime.*

## CONCLUSION

For the reasons set forth above, the cure provision in the Settlement Agreement provided Cavallini with an assumable interest in the Lease as of the Filing Date.

The parties are ordered to contact this Court to set an evidentiary hearing on Cavallini's motion to extend time to assume or reject the non-residential lease for real property.

Settle Order on five (5) days' notice.