In re Borbridge and Louis DeSANTIS,
a partnership t/a Walnut
Pizza, Debtors.

Bankruptcy No. 86–03281F.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 14, 1986.

Charles C. Coyne, David D. Milne, Philadelphia, Pa., for the movants, Chris Vasiliades and Paraskevi Vasiliades, his wife.

Joseph B. Finlay, Jr., B. David Sigman, Philadelphia, Pa., for the debtors, Borbridge and Louis DeSantis, a partnership t/a Walnut Pizza.

Anastasius Efstradiades, Philadelphia, Pa., for petitioning creditors.

OPINION

BRUCE FOX, Bankruptcy Judge:

The issue before this court is whether a landlord is entitled to relief from the automatic stay in connection with a nonresidential lease of real property in a chapter 7 proceeding. For the reasons set forth below, I will deny the motion, but will require the debtor to pay postpetition rent to the lessor.[1]

I.

On July 7, 1986, three unsecured creditors of Alan Borbridge and Louis DeSantis, a partnership trading as Walnut Pizza (hereinafter "debtors"), commenced this chapter 7 case by filing an involuntary petition against the debtors pursuant to 11 U.S.C. § 303. On July 28, 1986, Chris Vasiliades and Paraskevi Vasiliades (hereinafter "lessors") filed a motion for relief from stay against the debtors. After several continuances, during which time the parties agreed the automatic stay would remain in effect, an evidentiary hearing was held on October 27, 1986. Also on October 27, 1986, the debtors consented to the entry of an order for relief under 11 U.S.C. § 303(h).

---

1. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 9014 and 7052.

On April 3, 1981, the lessors entered into a commercial lease for the premises 1221 Walnut Street, Philadelphia, PA (hereinafter "lease") with Michael Bouidikis, John Bouidikis and Chris Bouidikis (hereinafter "original lessees"). By assignment dated April 2, 1985, the lease was assigned by the original lessees to the debtors. Under the lease, the original term was to expire on April 30, 1986. However, an addendum to the lease grants the lessee the option to renew for an additional five year period. The parties agree that the option to renew was validly exercised.

The lease and addendum provide for rental payment of $1,000.00 per month through April 30, 1986 and an increase in rental payments to $1,100.00 per month commencing May 1, 1986, with further increases $100.00 per month on May 1 of each year thereafter until the end of the term. The assignment of the lease dated April 2, 1985 also modifies the lease to provide that the debtors are liable for payment of the use and occupancy tax assessed by the City of Philadelphia.

The debtors failed to make their April and May 1986 rental payments. As a result, on May 21, 1986, the lessors instituted an eviction action against the debtors in the Philadelphia Municipal Court at LT # 86–5–21–01660. A hearing on the eviction action was scheduled for June 5, 1986.

The debtors' testified, and I find credible, that on June 5, 1986, the debtors, through one of the partners, went to Municipal Court and negotiated a settlement agreement with the lessors' attorney, Jerome Feinberg, Esquire. Under the terms of the agreement, the lessors granted the debtors the right to reinstate the lease by curing the delinquent rental payments within 30 days or until execution of the alias writ of possession, whichever came last. Pursuant to this agreement, a monetary judgment in the amount of $3,640.00 and a judgment

for possession was entered in the Municipal Court eviction action.

On July 7, 1986, the involuntary bankruptcy petition was filed in this court against the debtors. As of that date, no alias writ of possession had been issued and served upon the debtors and they remained in possession of the premises. Prior to the filing of this petition but subsequent to the entry of the consent judgment in Municipal Court, the debtors paid $1,400.00 to the lessors. Furthermore, they were prepared to cure the lease default entirely on July 9, 1986, but the lessors, upon learning of the bankruptcy filing refused to accept any additional funds.

The lessor's motion for relief from the automatic stay was filed on July 28, 1986 and the hearing on the motion was continued on several occasions. On September 19, 1986, the date of one of the scheduled hearings, the debtors testified, and I find credible, that they offered to cure the entire rent arrearage on the condition that the lessors acknowledge that the lease was still in effect. The lessors refused the tender due to the condition attached. As a result, no rent has actually been paid for the period since July 7, 1986. For the period from July 1, 1986 through November 30, 1986, inclusive, the debtors are in arrears in rental in the amount of $4,650.00. In December, another $1,150.00 will fall due. There is no dispute that the debtors have remained in possession of the premises and continued to operate their business.[2]

Finally, at trial in October, the debtors testified that there is a prospective purchaser for the debtors' business who would take an assignment of the lease. The debtors also testified that the buyer has been unwilling to go forward at this time due to the uncertainty which has been created by the filing of lessors' motion for relief from

---

2. I note that shortly after consenting to the entry of the involuntary chapter 7 petition on October 27, 1986, the debtors, rather than convert the chapter 7 case to chapter 11 pursuant to 11 U.S.C. § 706(a), initiated a second bankruptcy case by filing a voluntary petition under

chapter 11. As a result, it is likely that the debtors have continued to operate their business since October 27, 1986. In this decision, I do not pass on the propriety of the second bankruptcy filing.

automatic stay as to the existence of the lease. The debtors, however, provided no other details regarding the prospective sale of their business.[3]

## II.

In support of their motion for relief, lessors make two arguments. First, lessors contend that the lease was terminated by state court proceedings prior to the bankruptcy and thus the debtors have no interest in the premises which can constitute either property of the estate under 11 U.S.C. § 541 or which is capable of being assumed by the trustee under 11 U.S.C. § 365. Therefore, the lessors contend that there is no property which is even subject to the stay. Alternatively, the lessors argue that even if the debtors do have an interest in the property, the automatic stay should be terminated because the lessors lack adequate protection under 11 U.S.C. § 362(d)(1).

The debtors counter with the following arguments: (1) the lessors' may not proceed under 11 U.S.C. § 362 at all because their exclusive bankruptcy remedies are found under 11 U.S.C. § 365; (2) the lease was not terminated prior to the filing of the involuntary petition on July 7, 1986; and (3) even if section 362(d)(1) is applicable in this case, the debtors have offered the lessors adequate protection through the offer to cure all past due rentals under the lease.

The arguments raised by the parties have divided bankruptcy courts for some time for there is a tension between sections 362 and 363 on the one hand and section 365 on the other concerning the rights of lessors. In order to understand the tensions, it is useful to summarize the various approaches taken by courts when a lessor seeks relief from the automatic stay.

The majority of bankruptcy courts to consider the issue has concluded, using different rationales, that lessors are entitled to relief from stay under section 362(d)(1). Often relevant has been the threshold de-termination whether, at the time of bankruptcy filing, there was a lease that could be assumed pursuant to section 365 or whether the debtor's rights under the lease were terminated prepetition. If the lease was terminated, courts have readily granted relief from stay. *See In re McGovern Auto Specialty, Inc.,* 40 B.R. 521 (Bankr.E.D.Pa.1984); *Matter of Annex Camera, Inc.,* 26 B.R. 587 (Bankr.S.D.N.Y.1983); *Matter of GSVC Restaurant Corp.,* 3 B.R. 491 (Bankr.S.D.N.Y.1980), *aff'd,* 10 B.R. 300 (S.D.N.Y.1980). *See also In re Law Clinic of Mott & Gray, P.C.,* 39 B.R. 73 (Bankr.E.D.Pa.1984) (termination of lease prior to bankruptcy filing can constitute cause under section 362(d)(1)) (dictum). Even if the lease was not terminated prior to the bankruptcy filing, some courts have granted relief from stay because the lessors lacked adequate protection. *Executive Square Office Building v. O'Connor and Associates, Inc.,* 19 B.R. 143 (Bankr.N.D.Fla.1981); *In re Richards Pontiac, Inc.,* 6 B.R. 773 (Bankr.E.D.N.Y.1980). *See also In re Inn at Longshore, Inc.,* 32 B.R. 942 (Bankr.D.Conn.1983) (because adequate protection not provided, relief granted under section 362 after consideration of lessor's remedies under sections 363 and 365): *In re Castle Tool Specialty Co.,* 22 B.R. 44 (Bankr.E.D.Pa.1982). Relief from stay under section 362 may also be granted when the lease has been rejected pursuant to 11 U.S.C. § 365. *See In re Vermont Real Estate Investment Trust,* 25 B.R. 809, 813 (Bankr.D.Vt.1982).

Many of these cases have undertaken a traditional application of section 362(d)(1) and have simply assumed that the lessor is a "party in interest" under that section. However, other bankruptcy courts have not been comfortable in relying solely on section 362(d)(1) and have looked to sections 363(e) and 365 in determining the lessor's rights. For example, some courts have relied upon section 363(e) to require ade-

---

**3.** The existence of this prospective purchaser may, in all likelihood, be the cause of debtors' vigorous objection to relief from the automatic stay.

quate protection of the lessor's interest.[4] *In re Attorneys Office Management, Inc.,* 29 B.R. 96 (Bankr.C.D.Cal.1983); *In re Richards Pontiac.*

Other courts, in recognition of the policies underlying the debtor's[5] right to assume or reject an unexpired lease under section 365, have resolved the conflicting interests of debtor and lessor by setting a deadline for the assumption or rejection of the lease under section 365(b)(1)[6]. *In re Flexipak, Inc.,* 49 B.R. 641 (Bankr.S.D.N.Y.1985); *In re Inn at Longshore, Inc.; In re Vermont Real Estate Investment Trust; In re Horn & Hardart Baking Co.,* 19 B.R. 597 (Bankr.E.D.Pa.1982).

Finally, there is a line of cases which holds that sections 362 and 363 have no applicability whatsoever to unexpired leases. These decisions, upon which the debtors in the case at bar rely, suggest that a lessor's exclusive remedies are under section 365 of the Bankruptcy Code. The leading case on point is *In re Sweetwater,* 40 B.R. 733 (Bankr.D.Utah 1984). *Accord, In re Wheeling-Pittsburgh Steel Corp.,* 54 B.R. 385 (Bankr.W.D.Pa.1985); *Matter of Easthampton Sand & Gravel Co., Inc.,* 25 B.R. 193 (Bankr.E.D.N.Y.1982); Broderick, *The Postpetition, Pre-Rejection, Pre-Assumption Status of an Executory Contract,* 59 Am.Bankr.L.J. 197 (1985) (hereinafter "Broderick"). *See also In re Attorneys Office Management, Inc.,* 29 B.R. at 98–99 (lessor has no right to relief from stay under section 362 during the time period that trustee has for decision whether to assume or reject but lessor is entitled to adequate protection under section 363(e)). Based on its reading of the legislative history of the Code, the *Sweetwater*

court concluded that the concept of adequate protection in the Code was designed to protect secured creditors only and not the property interests of lessors. 40 B.R. at 742. The court also concluded that requiring debtors to provide lessors with adequate protection pursuant to section 363(e) would defeat the section 365 policy of allowing the debtor to make a careful and informed decision whether to assume or reject an unexpired lease. Therefore, the court held that a lessor is not "an entity that has an interest in property" within the meaning of section 363(e) 40 B.R. at 742–45. Following *Sweetwater* would mean that a trustee has no obligation to make any rental payments until he decided to assume the lease under section 365 (at least for leases other than for nonresidential real property, *see* 11 U.S.C. § 365(d)(3)).

The debtors in the case at bar urge this court to follow *Sweetwater* and hold that the lessors' exclusive remedies are found in section 365. The debtors suggest that since the lessors have moved for relief under section 362 and not section 365, the pending motion must be denied.

### III.

■ The underlying premise of *Sweetwater,* that neither section 362(d)(1) nor section 363(e) can be utilized by lessors is a troubling one for it can yield a result where an entity with a mortgage on a property is afforded greater protection than one which actually owns the property and has chosen to lease it. *See also In re Castle Tool Specialty Co.,* 22 B.R. at 45. Furthermore, *Sweetwater* severely restricts the meaning of section 363(e) which, on its face, seems

---

**4.** Section 363(e) provides:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

**5.** For purposes of this general discussion, I am not distinguishing between the rights of a debtor in possession and the rights of a trustee.

**6.** One court has analyzed the tension between sections 362 and 365 as follows:

[Granting relief under section 362] would frustrate purpose of § 365 which assures the trustee a sufficient amount of time to assume or reject these obligations.

*In re Attorneys Office Management, Inc.,* 29 B.R. at 98.

to accord a lessor the right to adequate protection when a debtor decides to use or lease property. *See In re Attorneys Office Management, Inc.*

The 1984 amendments to the Bankruptcy Code also undercut the *Sweetwater* analysis. Section 362(b)(10) [7] was added to the Code and provides an exception to the reach of the automatic stay for certain lessors of nonresidential real property. By implication, other lessors of nonresidential real property are restricted by the stay provisions of section 362(a).[8] Section 365 was also amended by, *inter alia*, the addition of subsection (d)(3) requiring lessees of nonresidential real property to comply with all lease terms until a decision to reject the lease has been made. To follow *Sweetwater* would mean that a lessor is effectively stayed upon the filing of the bankruptcy petition [9] but the lessor cannot obtain relief from the stay when the trustee utilizes the leasehold under section 363 without adequate protection or when the trustee fails to comply with lease terms as required by section 365(d)(3). If Congress intended for lessors in a chapter 7 proceeding to be protected solely by section 365(d)(1), (4) and (g)(1) while the trustee is deciding whether to assume the lease, it would have said so more clearly. I must therefore decline to follow *Sweetwater* and I will apply the provisions of sections 361, 362(d)(1) and 363(e) to a leasehold interest in a chapter 7 proceeding involving a nonresidential lease.[10]

Since I have concluded that the provisions of section 365 alone do not govern this dispute, I must now resolve the question whether there is any lease to assume in this matter. I must also define adequate protection within the framework of this chapter 7 involuntary case where the 60 day period provided by section 365(d)(4) has not yet expired.

## IV.

The lessors contend that the lease was terminated prior to the bankruptcy filing and that therefore there is no property of the estate which is even subject to the automatic stay. In this district, it has been settled for some time that "property of the estate" under 11 U.S.C. § 541 includes even a bare possessory interest in leased property, even if the lease was terminated prior to bankruptcy, and that such property is subject to the automatic stay, 11 U.S.C. § 362(d)(3). *See In re Law Clinic of Mott & Grey, P.C.,* 39 B.R. at 74 n. 3; *In re Lewis,* 15 B.R. 643 (Bankr.E.D.Pa.1981); *In re Andorra Meat Market, Inc.,* 7 B.R. 744 (Bankr.E.D.Pa.1980). Strictly speaking,

---

7. Section 362(b)(10) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 363(b), 98 Stat. 363–64 (1984). At that time, it was added to the Code as § 362(b)(9), resulting in the existence of two paragraphs denoted as § 362(b)(9). *See id.* § 392(a), 98 Stat. 365 (1984) (redesignating former subsection (b)(8) as (b)(9)). Since 1984, the subsection referred to in the text has been cited as (b)(9)). However, section 283(d)(3) of the recently enacted Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 has finally corrected this technical error by redesignating the subsection referring to nonresidential leases as subsection (b)(10).

8. Most recently in this district, Bankruptcy Judge Scholl held that, notwithstanding section 365, the automatic stay under section 362 is applicable to lessors of nonresidential real property. *In re Adams,* 65 B.R. 646 (Bankr.E.D.Pa. 1986).

9. One commentator who espouses the *Sweetwater* approach phrases it this way: "[T]he rights of a non-debtor party to [a lease] are not 'stayed' by section 362(a); they are temporarily rendered unenforceable by section 365." *Broderick, supra,* at 217. However one describes it, the result is the same.

10. I need not reach the question whether the concept of adequate protection in a chapter 11 or chapter 13 case means any more than the right of the lessor to request a prompt decision to assume or reject a lease under 11 U.S.C. § 365(d)(2). In addition, I need not resolve, at this time, the interplay, if any, between section 365(g)(1) and adequate protection. I do note that adequate protection is a flexible concept and that a lessor normally holds an unsecured claim for postpetition rent by virtue of section 365(g)(1) when a lease is rejected. Because of section 365(d)(3), however, a lessor of nonresidential real property is entitled to post-relief rental payments which may, by themselves, provide adequate protection.

though, I need not reach that issue in this case because I conclude that the lease was not terminated prior to the bankruptcy and so there is no doubt that the lease is property of the estate subject to the automatic stay.

Disputes whether a lease has been "terminated" prior to a bankruptcy filing commonly arise in the context of section 365. This is so because it is uniformly recognized that where a lease has been terminated under state law prior to bankruptcy, the termination renders the lease unassumable under section 365. *E.g., In re Triangle Laboratories, Inc.,* 663 F.2d 463 (3d Cir. 1981); *In re Goodloe,* 61 B.R. 1016, 1018 & n. 4 & cases cited therein (Bankr.M.D.Tenn. 1986). However, before a lease would become unassumable; the termination must be completed and not subject to reversal. This requirement has been concisely explained as follows: "If ... the termination process has not been completed or, if completed, can be reversed by application of a state anti-forfeiture statute or waiver doctrine the trustee may still assume." 2 Collier on Bankruptcy ¶ 365.04, at 365–35 (15th ed. 1986) (footnotes omitted). As one court has explained:

> If the termination of a lease has not cleared the final hurdles under state law finally and conclusively prior to the filing of a petition under Chapter 11, 13, or 7, [the bankruptcy] court has initial jurisdiction with respect to determining whether the estate has any interest in the lease, whether the automatic stay of § 362 is applicable thereto and, if so, whether it should be maintained, modified or vacated, and, whether the provisions of § 365 are applicable.

11. Under Pennsylvania law, if a lease is terminated solely due to nonpayment of rent, the default can be cured at any time up to the execution of the writ of possession. *Compare* 68 P.S. § 250.504, *repealed,* Act No. 53, P.L. 202, § 2(a) (1271), *replaced by* 42 Pa.C.S. § 1722(a)(1) (providing for the promulgation of rules on the subject) *with* 42 Pa.C.S. § 20003(b) (in the absence of rules, the practice and procedure of the repealed statute remain in effect as part of the common law).

*Executive Square Office Building v. O'Connor and Associates, Inc.,* 19 B.R. at 147. *See also In re Law Clinic of Mott & Gray, P.C.; Matter of Easthampton Sand & Gravel Co.*

In the case at bar, the termination of the lease was not completed at the time the bankruptcy was filed because there was an agreement under which the debtors were entitled to cure their delinquency and reinstate the lease. The right to cure had not yet expired when the bankruptcy was filed. Therefore, any "termination" of the lease in connection with the eviction process was still subject to reversal on July 7, 1986, the date the bankruptcy petition was filed.[11] It follows that there is an assumable lease under section 365 and property of the estate which is subject to the automatic stay under section 362(a). *See In re Goodloe,* 61 B.R. at 1019–20 (lease not terminated based on terms of judgment by agreement). *See also In re Law Clinic of Mott & Gray, P.C.; Matter of Easthampton Sand & Gravel Co.*

## V.

The lessors argue that even if the lease was not terminated and the automatic stay is applicable, relief from the stay should be granted because the debtors have not provided them with adequate protection. The debtors argue that their offer to cure the lease default satisfies the requirements of adequate protection.

Section 361 of the Code gives some examples of adequate protection. However, the term itself is nowhere defined in the statute. As one court has colorfully observed:

> This omission was probably deliberate. Congress was aware of the turbulent

In this case, the eviction complaint filed in the Municipal Court raised both nonpayment of rent and termination of the term of the lease as grounds for eviction. The judgment entered by agreement does not state the basis of the judgment. It is not necessary for the court to determine whether the debtors had a statutory right to cure in this case since there was a right to cure by agreement.

rivalry of interests in reorganization. It needed a concept which would mediate polarities. But a carefully calibrated concept, subject to a brittle construction, could not accomodate the "infinite number of variations possible in dealings between debtors and creditors." ... This problem required, not a formula, but a calculus, open-textured, pliant and versatile, adaptable to "new ideas" which are "continually being implemented in this field" and to "varying circumstances and changing modes of financing." ... Adequate protection was requisitioned to meet these needs.

*In re Alyucan Interstate Corp.*, 12 B.R. 803, 805 (Bankr.D.Utah 1981) (citations omitted).

█ In the case at bar, my starting point necessarily is section 365(d)(3). That section provides that after the order for relief, the trustee (or debtor in possession) shall timely perform all the obligations under the unexpired lease of nonresidential real property until the lease is assumed or rejected. The trustee's performance of his obligations under section 365(d)(3) is at least a component of adequate protection. At a minimum, then, for the stay to remain in effect, all rentals falling due under the lease since October 27, 1986, the date of the order for relief on the involuntary bankruptcy petition, must be paid.

The adequate protection inquiry does not necessarily end with section 365(d)(3). I do not believe that the flexible concept of adequate protection is limited to a mechanical application of section 365(d)(3). It is true that some courts have held that the requirement of adequate protection of a lessor can be satisfied by periodic payments of either the monthly rental under the lease or the fair market rental value of the prem-

ises. *See In re Dabney*, 45 B.R. 312 (Bankr.E.D.Pa.1985); *In re Castle Tool Specialty. But see In re A.L.S., Inc.*, 3 B.R. 107 (Bankr.E.D.Pa.1980) (in addition to payment of all postpetition rentals falling due, stay conditioned upon payment of a security deposit); *In re Inn at Longshore, Inc.*, 32 B.R. at 944 (adequate protection must mean something more than prompt payment of current rent falling due). Depending upon the payment history under the lease and past relationship of the parties, in some cases, periodic payment of rent due subsequent to the order for relief may well constitute adequate protection. In the case at bar, however, I conclude that adequate protection requires something more.

█ In this case, there was a significant default by the debtors under the lease prior to the bankruptcy. Indeed, the lease was perilously close to termination. Since the filing of the bankruptcy, no further rental payments have been made. The lack of postpetition performance by the debtors is tempered, of course, by their explanation that they tendered all postpetition payments and that the tender was declined by the lessors. In effect, the debtors have represented that they are ready, willing and able to cure all postpetition arrears under the lease.[12] In these circumstances, payment of all postpetition rent will provide adequate protection to the lessors.[13] In addition, the court will require the December 1986 payment to be made a few days in advance; this will make the debtors current postpetition through December 1986. Since the order for relief was entered effective October 27, 1986, the debtors will have made their decision by the end of December 1986 whether to assume or reject the lease.[14] *See* 11 U.S.C. § 365(d)(4)

---

**12.** In fact, the debtors claimed the ability to cure the entire lease default.

**13.** This does not mean that in every involuntary bankruptcy case adequate protection necessarily requires conditioning the stay upon payment of rentals falling due after the filing of the petition but before the order for relief.

**14.** In light of the debtors' filing of a chapter 11 petition after the entry of the order for relief in the involuntary chapter 7 case, see note 2, *supra,* I assume that the debtors will convert the chapter 7 proceeding to chapter 11. Otherwise, it will be up to the trustee, not the debtors, to decide whether to assume or reject the lease in this case.

(any lease not assumed or rejected within 60 days after the order for relief or such additional time set by the court is deemed rejected). In this way, the debtors will enjoy their statutory right to determine whether to assume or reject the lease and the interest of the lessors will be adequately protected in the meantime.

An order consistent with this opinion was entered on November 10, 1986.