**In re John T. REICE, t/a Serve Yourself Laundromat, Debtor.**

**Bankruptcy No. 86–03236T.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 1, 1988.

Bruce Robert Kay, Philadelphia, Pa., for debtor.

Frank M. D'Amorei, Philadelphia, Pa., for movant.

Frederick L. Reigle, Reading, Pa., Trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Laundromat equipment leased by John T. Reice ("debtor") is the subject of the in-

stant motion for relief from the automatic stay filed by Landmark Leasing, Inc., ("movant"). We deny relief under 11 U.S.C. § 362(d)(2) because movant has failed to prove that this property is not necessary for an effective reorganization. Section 362(d)(1) provides no basis for relief because we find that, although a lessor in a chapter 13 case is entitled to the protections of § 362, movant possesses ample security which, coupled with the monthly payments proposed by debtor, constitute adequate protection.

Movant is an equipment leasing company. Notes of Testimony ("N.T."), July 29, 1987, p. 4. Debtor, trading as "Serve Yourself Laundromat", leased washers, dryers, commercial dryers and a boiler from movant[1] ("equipment") under the terms of a 63 month lease which provided for monthly lease payments of $2,014.85. N.T., pp. 5, 7.

This relationship has come full circle. Debtor filed his chapter 13 petition on July 2, 1986. On March 24, 1987, in response to a § 362 motion filed by movant Landmark, and in the face of no response, we entered an order granting relief from the automatic stay. Debtor immediately filed a motion for reinstatement of the stay, alleging that the § 362 motion had not been served on debtor as required by N.B.R. 7004(b)(9) and 9014, and by L.B.R. 9014.1. One week after the filing of the motion for reinstatement, and approximately one month after entry of the underlying order granting § 362 relief, but before we could hear the motion for reinstatement, movant repossessed the equipment. N.T., pp. 9. We heard and granted debtor's motion for reinstatement, and separately scheduled the instant hearing on the merits of the § 362 motion.

Since this is a § 362 motion, the valuation evidence adduced at the hearing is crucial. Movant purchased the equipment for $60,000. N.T. pp. 10. The terms of movant's lease with debtor called for monthly payments of $2014.85, N.T. Exh. "M-1," pp. 5, 7,[2] with an initial payment of $6,000 representing lease payments for the last three months. N.T., pp. 5. Movant's interest was collateralized by the equipment and a second mortgage on the property housing the laundromat.[3] N.T., pp. 19–20. As of September, 1985, the value of that real property was $35,000. N.T., pp. 20. The only values we have been given for the equipment are the $60,000 purchase price and the $11,700.00 price at which the property was sold after movant's repossession. In addition, at the time of the hearing on this matter, one piece of equipment which had not been repossessed by movant was still in the laundromat. Movant's leasing manager testified that they had been offered $2,800 for that piece of equipment. No evidence contradicting any of these valuations was introduced. This, coupled with the background of movant's witness, leads us to agree with movant's characterization that these were the "fair market values" for the property. N.T., pp. 10, 12, 17.

Two other figures are noteworthy. At the time that the original § 362 motion was filed, debtor was delinquent on nine (9)

---

**1.** There appears to be some discrepancy as to the number of pieces of equipment involved. *Compare* N.T., p. 4–5 (testimony of leasing manager that this lease involved "... approximately 25 dryers and—25 washers and 13 commercial dryers and a boiler"); Landmark's § 362 motion, pp. 2, para. 7 (26 washers, 26 coin units, 2 "superload" washers, 13 energy conservation gas dryers, 1 gas-fired hot water system); Landmark's § 362 motion, Exh. "A," Lease documents (same).

**2.** Again, we note a slight discrepancy in the figures. *Compare* Landmark's § 362 motion, Exh, "A," Lease, p. 1 (monthly payments of $2,014.00); N.T., pp. 5 (testimony of leasing agent that payments were approximately $2,000 per month); N.T., pp. 7 (testimony of leasing agent that monthly payments were $2,014.85); N.T. Exh. "M-1," ledger card ("payment amount" $2,014.85). We will rely on the figure from the ledger card since the lease itself was not introduced into evidence. *See In re Morysville Body Works, Inc.,* 86 B.R. 51, 52, 53, n. 2 (E.D.Pa.1988), *citing In re Aughenbaugh,* 125 F.2d 887, 889 (3d Cir.1942).

**3.** In its brief, movant suggests that the total amount of its mortgage is $114,004.80. Movant's brief, pp. 2. Again, because proper evidence was not introduced at trial, we may not consider this evidence. *In re Aughenbaugh,* 125 F.2d 887, 889 (3d Cir.1942).

monthly lease payments [4] for a total arrearage figure of $18,133.65. N.T., pp. 7. Testimony revealed that debtor had offered to pay between $1,000 and $1,200 per month as adequate protection. N.T. pp. 9, 24.

## I DISCUSSION

### A. *Section 362(d)(2)*

■ Under § 362(d)(2), we must grant relief when the debtor lacks equity in the subject property *and* the property is not necessary to an effective reorganization.[5] "Equity" has been defined in the case law to mean the "... difference between the property value and the total amount of liens against (the property.)" *In re 6200 Ridge*, 69 B.R. 837, 842 (Bankr.E.D.Pa. 1987) (parenthetical added). The burden of proof on the issue of equity is on the party seeking relief. 11 U.S.C. § 362(g). In the instant case, the value of the property is $14,500 ($11,700 of repossessed equipment plus $2800 for the remaining item). The only lien of which we are aware is movant's interest in the equipment, as described in this exchange between counsel for debtor and movant's leasing agent:

Q. I see. You had a UCC 1 on file with respect to this equipment

A. Yes

Q. Did you have any security agreement for the UCC 1?

A. It's tied to the lease and it states it right on the UCC that it's only for filing and not intended as a security agreement.[6]

N.T., pp. 19. The underlying lease and UCC filings were not admitted into evidence at the hearing.[7] This testimony, taken alone, is not sufficient to convince us that the movant has carried its burden of showing a lack of equity in the property. Thus, although we strongly suspect that debtor lacks equity, it has not been proven.

Even if debtor lacked equity, both parties ignored § 362(g), which required that debtor prove the other half of the § 362(d)(2) test: the necessity of the property to an effective reorganization.

### B. *Section 362(d)(1)*

The Code also requires that we grant relief when the more flexible § 362(d)(1) test is met and a party has shown "cause," including a lack of adequate protection. Once again, proof and valuation are critical. The burdens of proof are set forth in § 362(g), which provides:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on *all other issues.*

11 U.S.C. § 362(g). (emphasis added)

We have elaborated on these burdens of proof in a recent opinion:

Going beyond the facile divisions of § 362(g), courts have found a requirement that the moving party make an

---

4. This differs slightly from the ten (10) month approximation found in movant's brief. *See* movant's brief, pp. 2. For the reasons discussed *supra*, nn. 2–3, we will accept the otherwise unchallenged nine (9) month figure.

5. The complete text of this subsection reads:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

6. We are troubled by the failure to describe movant's security interest more accurately. The parties do not appear to dispute, however, that movant has a security interest sufficient to invoke adequate protection concerns.

7. *See* discussion, *supra* nn. 2–3. Multiple exhibits in pleadings do not rise to the level of properly introduced and authenticated documentations.

initial presentation sufficient to create a prima facie case. *See e.g., In re Planned Systems, Inc.,* 78 B.R. 852, 16 B.C.D. 543 (Bankr.S.D.Oh.1987); *In re Tashjian,* 72 B.R. 968 (Bankr.E.D.Pa. 1987); *In re Ronald Perlstein Ent., Inc.,* 70 B.R. 1005, 1007 (Bankr.E.D.Pa.1987); *In re Stranahan Gear Co., Inc.,* 67 B.R. 834 (Bankr.E.D.Pa.1986); *In re Compass Van & Storage Corp.,* 61 B.R. 230 (Bankr.E.D.N.Y.1986); *In re Rye,* 54 B.R. 180, 13 B.C.D. 853 (Bankr.D.S.C. 1985); *Provident Mutual Life Ins. Co. v. Winslow Center Assocs. (In re Winslow Center Assocs.),* 32 B.R. 685 (Bankr.E.D. Pa.1983); *In re Curtis,* 40 B.R. 795, 11 B.C.D. 1256 (D.Utah 1984); *Central Penn Nat'l Bank v. Zimmerman (In re Ludwig Honold Mfg. Co.),* 33 B.R. 722, 723, Bankr.L.Rep. para. 69,608 (Bankr.E. D.Pa.1983) *American Bank & Trust Co. v. Ram Mfg. (In re Ram Mfg.)* 32 B.R. 969 (Bankr.E.D.Pa.1983); *Clark Equipment Credit Corp. v. Kane (In re Kane),* 27 B.R. 902 (Bankr.M.D.Pa.1983); *Great American Credit Co. v. Tursi (In re Tursi),* 9 B.R. 450 (Bankr.E.D.Pa. 1981). This requirement of a prima facie presentation flows from § 362(d)(1), which requires the court to grant relief "on request of a party in interest ...," 11 U.S.C. § 362(d), and "for cause ..." 11 U.S.C. § 362(d)(1). Thus, a prima facie case requires that movant make a "substantive showing of cause." *In re Kane,* 27 B.R. 902, 904. *Accord, In re Stranahan Gear Co., Inc.,* 67 B.R. 834, 837. The underlying philosophical basis for this requirement is that the debtor should not be forced to defend the automatic stay, one of a debtor's most fundamental protections, against general attacks; only upon a showing of cause should the debtor risk losing this protection. *Id.*

*In re Morysville Body Works, Inc.,* 86 B.R. at 55.

We must determine whether movant has made that vague "initial showing" before we determine whether debtor carries its burden on the non-equity issues floating in the sea of "adequate protection" arguments. Movant's argument are based on the allegation that it lacks adequate protection because (1) lease payments were in arrears; (2) it received no money under the chapter 13 plan; (3) the lease was neither accepted nor rejected, and (4) the equipment was depreciating.

### 1. *Arrears*

Our first question is whether movant has shown that the failure to make payments constitutes "cause" for relief from the stay. Debtor does not deny that he is in arrears. These two factors may present a prima facie case. *In re Tursi,* 9 B.R. 450.

### 2. *Failure To Receive Money Under The Chapter 13 Plan*

As a general rule, a failure to make post-confirmation payments constitutes § 362 "cause." *See e.g., Ellis v. Pan (In re Ellis),* 60 B.R. 432, 435, Bankr.L. Rep. para. 71,161 (9th Cir.1985), *FSFG Service Corp. v. Kim (In re Kim),* 71 B.R. 1011, 1017, Bankr.L.Rep. para 71,776 (Bankr.C.D.Cal.1987); *In re Davis,* 64 B.R. 358, 359, Bankr.L.Dec. para. 71,432 (Bankr. S.D.N.Y.1986); *In re Clark,* 38 B.R. 683, 685 (Bankr.E.D.Pa.1984); *Fedl. Ntl. Mortgage Assn. v. Moore (In re Shahid),* 27 B.R. 673 (Bankr.S.D.Oh.1982); *In re Quinlan,* 12 B.R. 516, 517, Bankr.L.Rep. para. 68,260 (Bankr.E.D.Wis.1981); *In re Anderson,* 9 B.R. 248, 250 (Bankr.E.D.Pa. 1981); *but see In re Durben,* 70 B.R. 14, 16 (Bankr.S.D.Oh.1986) (stay not lifted because no material default); *Commonwealth v. Davis (In re Davis),* 11 B.R. 680, 681, Bankr.L.Rep. para. 68,413 (Bankr.E.D. Pa.1981) (particular circumstances of case, including short period of time during which payments were skipped, caused court to refuse to lift the stay). A debtor, however, can defeat a § 362 motion by showing that his plan adequately protects the secured party's valid security interest. *In re Capodanno,* 83 B.R. 285, 287 (Bankr.E.D.Pa. 1988). To present a prima facie case, movant must show (1) the existence of an obligation; (2) a valid security interest as to which relief is sought; (3) "cause," such as a post-confirmation default. *In re Kim,* 71 B.R. 1011, 1016.

The glitch in movant's argument is that no confirmed chapter 13 plan exists.[8] We note that, upon proper motion, this court occasionally allows the chapter 13 trustee to distribute funds in advance of confirmation. Had such a motion been presented, we might have analogized this case to the post-confirmation decisions cited above. But movant filed no such motion. Thus, we are faced with pre-confirmation defaults. We see no reason to treat these skipped payments any differently from the arrearages described in (B)(1), above.

### 3. *Failure to Assume or Reject Lease*

■ Although movant argues that cause exists because the trustee has failed to assume or reject the lease, the parties both overlook the critical conflict on this issue. The controversial question shaping our decision is whether the language in 11 U.S.C. § 363 ("... entity that has an interest in property used, sold or leased ...") covers a *lessor* of personal property in a chapter 13 during the period prior to the debtor's assumption or rejection of the unexpired lease, or whether the protections of § 362 are available only to secured parties.[9] Phrased on a more practical level, the question is whether a secured creditor has a constitutionally guaranteed right to have the value of its collateral protected.

This question arises because the interrelationship of several Code sections is vague. Sections 363 and 365 cover similar subject matter. The trustee has a long period of time in which to decide whether a lease should be assumed or rejected:

> (2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor *at any time before the confirmation of a plan but the court*, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2) (emphasis added). In the interim prior to assumption or rejection, the Code provides:

> (e) Notwithstanding any other provision of this section, at any time, on request of *an entity that has an interest* in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide *adequate protection* of such interest.

11 U.S.C. § 363(e) (emphasis added). Once the trustee decides to assume a defaulted lease, he may not do so unless he:

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides *adequate assurance* of future performance under such contract or lease.

11 U.S.C. § 365(b)(1)(A)–(C) (emphasis added).

The adequate protection/assurance language of §§ 363 and 365 is complicated by § 362 which allows the court to grant relief for "cause," including a lack of adequate protection. The landmark decision in this area provides a scholarly analysis of the history of these adequate protection provisions, and concludes that giving a lessor adequate protection during the interim between filing and the decision to assume or reject "... is contrary to the Code's clarification scheme and would render Section 365(b) meaningless."[10] *In re Sweetwater,*

---

**8.** The confirmation hearing has been postponed on several occasions.

**9.** We need not reach the question of whether special leases, such as leases with purchase options, assume enough of a secured or quasi-secured status to be entitled to § 362 protection. The only discussion in this record of a possible security interest is garbled and not probative on the true nature of this lease. N.T., pp. 19.

**10.** In announcing its decision, the *Sweetwater* court indicated that its holding was contrary to the prevailing view *at that time*. 40 B.R. 733, 743. It appears that *Sweetwater* has now at-

40 B.R. 733, 741, 10 C.B.C.2d 985, 11 B.C.D. 1220 (Bankr.D.Utah 1984) *Accord, Harris Int'l Telecommunications v. Three Star Telecast (In re Three Star Telecast)* 73 B.R. 270 (Bankr.D.P.R.1987). *Sweetwater* was a chapter 11 proceeding in which the subject lease covered various items of personal property. The *Sweetwater* court concluded that it would be contrary to the policy underlying the Code to view § 363(e) to include a *lessor's* interest among those interests entitled to adequate protection. *Id.* 40 B.R. at 742. A lessor's exclusive remedies according to the court, lie in forcing an assumption or rejection of the contract under § 365.

*Sweetwater* has received disparate treatment in our courts. The leading case in this circuit following *Sweetwater* is from the Western District of Pennsylvania. *In re Wheeling Pittsburgh Steel Corp.,* 54 B.R. 385, Bankr.L.Rep. para. 70,842 (Bankr.W.D.Pa.1985). In the *Wheeling* chapter 11, a computer lessor filed a motion to compel assumption or rejection of an unexpired lease, adequate protection, § 362 relief and a judgment for possession. The *Wheeling* court relied on *Sweetwater,* noting that none of the contrary decisions considered the "... legislative history of the structure of the bankruptcy court as a whole in making their determinations." *Id.* 54 B.R. at 390.

The two leading cases refusing to follow *Sweetwater* are also from this Circuit, and, more specifically, from this district. Our colleague, Judge Fox, has discussed these issues in a chapter 7 case in which a landlord requested relief from the automatic stay to deal with a non-residential lease of real property. *In re DeSantis,* 66 B.R. 998, 15 B.C.D. 229 (Bankr.E.D.Pa.1986). In *DeSantis,* Judge Fox identified five approaches used by courts to determine whether lessors are entitled to § 362 relief: (1) those cases in which no assumable lease exists at the time of the bankruptcy filing; (2) those cases in which the courts use straight adequate protection analysis; (3) those cases rejecting adequate protection analysis in favor of § 363(e) analysis; (4)

those cases in which the courts resolve the problems by setting a deadline for assuming or rejecting the lease; (5) those cases in which the courts suggest that §§ 362 and 363 have no application to unexpired leases (e.g., *Sweetwater* and *Wheeling*). *Id.* at 1000–01.

Similarly, Judge Scholl has considered these issues in the context of a chapter 11 case in which suppliers of programming moved to compel debtor television stations to resume payment under license contracts. *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 891, 16 C.B.C.2d 1116 (Bankr.E.D.Pa.1987). The programmers argued that under § 363(e) they were entitled to full current payment on their licensing contracts. In determining whether § 363(e) applied, Judge Scholl uncovered a wealth of conflicting pre-*Sweetwater* precedent from this district. *Id.* at 901.

Unlike the lease in *DeSantis* we are dealing with a lease of personal property, and must probe beyond that case to determine whether personal property leases should be afforded different treatment. *Sweetwater* and *Wheeling* did, of course, involve leases of personal property. *See also IFG Leasing Co. v. Christiana Hatch Farms,* 56 B.R. 237 (D.Minn.1985) (court determines that lessor of crop sprinkler systems was entitled to adequate protection, relying on *Sweetwater*). However, we can find nothing in the analysis of these cases that would limit their holdings to cases involving personal property leases. This is underscored by the fact that *Sweetwater,* a case involving a lease of personal property, has been followed by courts reviewing real property leases. *See e.g., In re Neil, Inc.,* 58 B.R. 969, 971 Bankr.L.Rep. para. 71,048 (Bankr.S.D.N.Y.1986); *In re Flexipak, Inc.,* 49 B.R. 641, 642 (D.S.D.N.Y.1985), *See also* 1 Norton Bankr.L. & Prac. § 23.11.60 and n. 5 (suggesting that *Sweetwater* represents the general view that a debtor tenant's assumption is normally treated under § 365(b) and not § 362(d)(2)).

We must return to *DeSantis* and *Grant Broadcasting* to determine whether the

tracted enough of a following to elevate it into the majority position.

reasoning in those opinions [11] is in any way limited to cases involving real property leases. Judge Fox rejected *Sweetwater* for three reasons. First, the *Sweetwater* analysis will result in situations in which an entity with a mortgage gets greater protection than an entity which actually owns property and has chosen to lease it. *Id.* at 1001. Second, he suggested that *Sweetwater* too severely circumscribes the plain meaning of § 363(e). Finally, he explained persuasively that the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") has undercut *Sweetwater*, at least with respect to chapter 7 cases involving non-residential real property. *Id.* at 1002. This BAFJA analysis is clearly limited to cases involving real property. But his "plain meaning" analysis of § 363(e) is equally applicable to real and personal property scenarios.

Judge Scholl also rejected the rationale underlying *Sweetwater*, explaining:

> ... We believe that there is an interplay, rather than a mutual exclusivity, between 11 U.S.C. § 362(d) and 11 U.S.C. § 365(d). If an executory contract is rejected per § 365(a), or by operation of § 365(d)(1), (d)(2), or (d)(4), we believe that § 362(d) is the only avenue which the obligee in an executory contract can travel to obtain the relief from the stay that we believe is necessary to put in motion the state-law remedies which the obligee must invoke to actually exercise his rights against defaulting debtors. Given our holding in *Adams* that the Bankruptcy Code provides no remedy for the obligee, but that he must resort to legal, state-court process for a remedy, we are at a loss to understand what the *Sweetwater* court expects the obligee to do to exercise his own rights to recover his property, even if he is able to prove

that the debtor's rights are cut off by the terms of § 365.

71 B.R. 891, 901. His rejection of *Sweetwater* is limited, however, because he suggests that *Sweetwater* may be controlling when examining executory contracts "other than these concerning rentals of realty." *Id.* at 901. Although he notes that the cases in which the lessor is afforded adequate protection have involved real property leases, and that the contrary *Sweetwater* and *Wheeling* cases involved other types of leases, *Id.* at 901, he provides no reason for the difference in treatment.

Our review of the *Sweetwater—Wheeling* and *DeSantis—Grant* lines of cases thus convinces us that no reason exists to limit the applicability of either line of cases to either real or personal property leases. We extend Judge Fox's discussion of § 363(e), "... which, on its face, seems to accord a lessor the right to adequate protection when a debtor decides to use or lease property." 66 B.R. 998, 1002. We feel that the *Sweetwater* excursion into legislative history was premature; we see no need to resort to legislative history when a Code section can be interpreted in light of its "plain meaning." [12] *See e.g., In re Reppert,* 84 B.R. 37, 39, (Bankr.E.D.Pa. 1988) (§ 1112(d)). There is no ambiguity in § 363(e), which describes those parties entitled to adequate protection to include entitles that have "an interest in property." There was nothing to prevent Congress from delimiting that definition if this protection was intended for the more specific group of unsecured creditors.

In addition to failing to account for the plain meaning of the statute, the *Sweetwater* court's focus on the interplay of these sections is flawed. The *Sweetwater* court first engaged in a long discourse on the meaning of "adequate protection." 40 B.R. 733, 735–42. It suggested that, taken

---

**11.** We do not overlook the numerous pre-*Sweetwater* opinions from this district. *See e.g., In re Grant Broadcasting,* 71 B.R. 891, 901 (and cases cited therein). We base our analysis on the post-*Sweetwater* decisions because they critique *Sweetwater*'s extensive legislative analysis and because they allow thoughtful analysis of the amendments enacted by the Bankruptcy and Federal Judgeship Act of 1984.

**12.** This is not a case in which the underlying language is less than clear. *See e.g., In re Daily Corp.,* 72 B.R. 489, 16 C.B.C.2d 659, 15 B.C.D. 1024 (Bankr.E.D.Pa.1987) (interpreting § 1112(b)).

alone, § 363(e) protection would extend to "... an entity." *Id.* at 742. 40 B.R. 733, 735 n. 2. To avoid interpreting this "entity" language in a vacuum, the *Sweetwater* court looked to the purpose of § 363(e), which is "... to protect the collateral of the secured creditors while the debtor in possession or the trustee operates the business." In support of this statement of purpose, they cite only one opinion, *In re Curlew Valley Assoc.*, 14 B.R. 506, 514 n. 13, 5 C.B.C.2d 255, 8 B.C.D. 495, Bankr.L. Rep. para. 68,414 (D.Ut.1981). The passage cited in *Sweetwater* is a footnote at the end of the *Curlew* opinion in which that court stated, without case law or legislative support, that the purpose of § 363(b) was to protect the secured creditor's collateral while the business was being operated. This court does not find that such broad, conclusory statements are any evidence of the "purpose" of § 363(e). Again, Congress could have expressed that purpose clearly by delimiting the class of entity entitled to § 363 relief. Since we reject *Sweetwater*'s "purpose" analysis, the balance of the analysis also fails because it is premised on that "purpose."

The only remaining question that we must resolve before we decide whether to follow *DeSantis* and *Grant* is whether those cases, a chapter 7 and a chapter 11 case, are precedent in the instant chapter 13 context. The operative feature of this case is the long period of time afforded the trustee to assume or reject leases. In chapter 9, 11, 12 and 13 cases, the trustee can wait until confirmation to assume or reject contracts. 11 U.S.C. § 365(d)(2). We see no reason to distinguish chapter 13 cases. *DeSantis* and *Grant* are good precedent.

In summation, we hold that a lessor in the position of the instant movant is not limited to forcing assumption or rejection under § 365 and may avail itself of the protection of § 362. This conclusion, however, merely leads into the more basic issue of whether the failure to accept or reject this lease constitutes § 362(d)(1) "cause," and, if so, whether movant's allegations are a sufficient initial showing to throw the § 362(g)(2) burden of going forward onto the debtor. Since we have adopted a minority position on the issue of whether lessees such as movant are entitled to § 362 relief, it is not surprising that no case law exists discussing the nature of the "initial showing" that movant must make.[13]

■ We cannot agree that movant has made the necessary initial showing by arguing that debtor has failed to assume or reject the lease. That failure simply does not rise to the level of "cause." All we have been told is that no assumption or rejection has occurred. We have not been shown the economic ramifications of the failure to do so. We have not been shown that reorganization is impossible without assumption or rejection. Hence, we cannot find "cause" on this point.

### 4. *Depreciation of Equipment*

■ Movant has offered vague, undocumented allegations that the equipment is depreciating by an unspecified dollar amount. Although the existence of an eroding equity cushion can, in some circumstances, constitute a prima facie § 362 case, *see e.g., In re Winslow Center*, 32 B.R. 685, 687 (Bankr.E.D.Pa.1983), movant has failed to make even a de minimis showing on this point.

### C. *Analysis of § 362(d)(1) Cause*

■ After considering the four allegations of cause raised by movant, we have rejected the arguments that cause exists because (1) debtor has failed to make pay-

---

**13.** The existing case law involves dispute about whether leases were terminated pre-petition. In these cases, courts have held that sufficient cause for § 362 relief exists when a lease has been terminated pre-petition because there is nothing left to assume. *In re Escondido West Travelodge*, 52 B.R. 376 (S.D.Cal.1985); *Kearny Mesa Crossroads v. Acorn Investments (In re Acorn Investments)*, 8 B.R. 506, 7 B.C.D. 135, Bankr.L.Rep. para. 67,927 (Bankr.S.D.Cal.1981); *Omni Intl, Ltd. v. Mimis of Atlanta, Inc. (In re Mimis of Atlanta, Inc.)*, 5 B.R. 623, 2 C.B.C.2d 805, 6 B.C.D. 807 (Bankr.N.D.Ga.1980); *Second & E Streets, N.E. Assoc v. Aries Enterprises Ltd. (In re Aries Enterprises, Ltd.)*, 3 B.R. 472, 1 C.B.C.2d 1069, 6 B.C.D. 280 (Bankr.Dist.Col. 1980).

ments pursuant to the chapter 13 plan; (2) debtor has not assumed or rejected the lease, and (3) the equipment is depreciating. This leaves only one of movant's allegations of cause: the fact that the mortgage is in arrears. We have already suggested, *supra*, p. 680, that this failure may, in some circumstances, present a prima facie case. Here, debtor was in arrears on nine (9) monthly lease payments totalling approximately $18,000. Considering the value of the equipment and the limited period of the lease, we find that this delay might, in some circumstances, constitute cause. *See also, In re Wright, Egan & Assoc.*, 60 B.R. 806, 807 (Bankr.E.D.Pa.1986) (failure to make any complete payments from the inception of the mortgage); *In re Graves*, 59 B.R. 928, 929 (Bankr.E.D.Pa.1986) (default of nearly six years; complete failure to pay over a period of 3 years); *In re Frascatore*, 33 B.R. 687, 688 (Bankr.E.D. Pa.1983) (only 2 payments over 11 month period); *Royal Bank of Pennsylvania v. Three Tuns (In re Three Tuns, Inc.)*, 35 B.R. 110, 111 (Bankr.E.D.Pa.1983); *Ukrainian Savings & Loan Assn. v. Trident Corp.*, 22 B.R. 491, 495 (E.D.Pa.1982); *In re Hinkle*, 14 B.R. 202 (Bankr.E.D.Pa. 1981) (failure to make any payment over a period of 10 months).

We must also, however, factor in the unique elements of this case, because a

> ... determination of whether a secured lender received 'adequate protection' from a debtor requires an analysis of all of the relevant facts, with a particular focus upon the value of the collateral, the likelihood that it will depreciate or appreciate over time, the prospects for a successful reorganization ... and the Debtor's performance in accordance with the plan. (cite omitted) While, of course, the last element requires some analysis of the Debtor's payment performance, this element should not, as the Association apparently suggests, be isolated from the other elements and uti-

lized alone as a basis to deprive a debtor of one of the most valuable tools with which the bankruptcy filing equips him or her.

*In re Tashjian*, 72 B.R. 968 (Bankr.E.D.Pa. 1987).

Again discussing these § 362 issues, Judge Fox has noted that chapter 13 debtors who propose a "confirmable plan," even when they have an 'abysmal' record of pre-petition payments, should be given the opportunity to "stave off" § 362 relief. *In re Capodanno*, 83 B.R. 285, 288 (Bankr.E. D.Pa.1988), *citing In re Mitchell*, 75 B.R. 593, 597–600 (Bankr.E.D.Pa.1987) (In *Capodanno*, the court refused to grant § 362 relief provided that debtor made all future payments towards the taxes and insurance).

In light of this, we consider the offer that debtor has placed on the table. Debtor offers "adequate protection" in the form of monthly payments of $1,200—slightly more than half the total of the original monthly lease payments. The Notes accompanying § 361 provide that the periodic payments "... might, but need not necessarily, be in the same amount as payments due on the secured obligation." *Notes* on the Committee on the Judiciary, Senate Rep. No. 95–989, U.S.Code Cong. & Admin. News 1978, p. 5787, reprinted in Bankruptcy Code, Rules and Forms (West's 1987 Revised Ed.), p. 89.

In the instant case, we heard unrefuted testimony that the fair market value of the equipment was $11,700 at the time of repossession. N.T., p. 17. Movant's leasing manager testified that the "fair payment" for equipment worth $11,700 over the balance of the term of the lease, given debtor's credit history, would have been $375.00 per month, plus 6% Pennsylvania sales tax (or a total of $397.50).[14]

Under the circumstances, we cannot hold that "adequate protection" requires payment of the full monthly lease payments.[15]

---

**14.** The parties give no weight to the unidentified piece of equipment remaining on the premise, *supra*, p. 678. Accordingly, we cannot factor it into our analysis.

**15.** Indeed, even movant does not go this far in its argument. Settlement negotiations broke down when the parties were *close* on their figures. Movant wanted $1,200 per month plus payment of $4,500 in arrears. Debtor offered

The goal of "adequate protection" is to protect against a decrease in value which directly offsets the secured party's interests in the collateral. 2 *Collier on Bankruptcy* § 361.01, p. 361–8 (1988 Ed.). Payments at half the level of the original lease would more than protect movant's interest since the property is now worth less than one-fifth its original value. There is no indication that it will increase in value. Thus, movant can protect the current value by "accepting" debtor's offer of $1,200 per month. This is three times the amount deemed necessary by the leasing manager to pay off a lease on the equipment as currently valued. If anything, the value of the equipment will decrease in the future. Under the circumstances, these payments would constitute adequate protection.

We are not unsympathetic to movant's plaintive cries that several pre-petition payments were skipped. Since this is not a question of cure under § 365(b), and since the payments proposed by debtor are substantial, movant will have to wait to raise that issue.

We are also mindful that the lease has not been assumed and is only being "used" by the debtors. Under § 363(e), we can condition use to provide adequate protection. To allow this situation to continue *ad infinitum* would work a hardship on movant. Resolution will occur, of course, on the date of the confirmation hearing, by which time the trustee will either assume or reject the lease. Accordingly, we will enter an order that this motion for relief from the automatic stay is denied without prejudice, and ordering counsel for debtor to arrange a confirmation hearing no later than August 15, 1988.

$1,000 per month which was later increased to $1,200 per month. N.T., 9, 24.